**RICHMAN BROS. CO. v. AMALGAMATED CLOTHING WORKERS OF AMERICA et al.**

Civil Action 29671.

United States District Court
N. D. Ohio, E. D.
Jan. 7, 1953.

Jones, Day, Cockley & Reavis, Cleveland, Ohio (Luther Day, Cleveland, Ohio, of counsel), for plaintiff.

Corrigan, MacMahon & Corrigan, Cleveland, Ohio (William J. Corrigan and Moses Krislov, Cleveland, Ohio, and William J. Isaacson, New York City), for defendants.

McNAMEE, District Judge.

The questions here presented arise upon plaintiff's motion to remand this cause to the Common Pleas Court of Cuyahoga County, Ohio. The plaintiff, Richman Brothers Company, is an Ohio corporation engaged in the manufacture and sale of men's clothing. Its principal factory and three of its retail stores are located in Cleveland, Ohio. It has a smaller manufacturing plant at Sturgis, Kentucky and 66 other retail stores located in various cities throughout the country.

On October 18, 1952 plaintiff filed a petition in the Common Pleas Court of Cuyahoga County seeking injunctive relief against the picketing of its stores by defendants. Concurrently with the filing of its petition plaintiff also filed a motion for a temporary injunction. The Common Pleas Court fixed the time for hearing the motion as November 10, 1952 and notice thereof was served upon the defendants. Three days before the date set for the hear-

ing on the motion for a temporary restraining order the defendants caused the case to be removed to this court on the ground that the petition alleged facts bringing the case within the original jurisdiction of this court as a civil action affecting interstate commerce under the Labor Management Relations Act, Title 29 U.S.C.A. § 151 et seq. Subsequently the plaintiff filed the motion to remand.

██ It is settled that plaintiff's own statement of the case may alone be considered in determining whether the action arises under the laws of the United States and is within the original jurisdiction of the federal courts. Louisville & Nashville R. R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126; Gully v. First Nat. Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Wright & Morrissey, Inc. v. Burlington Local No. 522, D.C., 106 F. Supp. 138; Dynamic Mfrs. v. Local 614 of the Gen. Drivers, etc., D.C., 103 F.Supp. 651.

In its petition, and in addition to the allegations in respect of its own corporate status, its business, location of its factories and stores, plaintiff avers that defendants are respectively a national labor organization, the Cleveland Joint Council of Amalgamated Clothing Workers, various locals thereof, and that the individual defendants are officers, members or agents of the national or local labor organization defendants.

The petition, which sets forth two causes of action, discloses that there is no strike of any of plaintiff's employees, or any labor dispute between plaintiff and any of its employees; that neither the defendant Amalgamated Clothing Workers of America nor any other labor organization or person is the representative for the purposes of collective bargaining with the plaintiff of those of plaintiff's employees at its factory or its stores who are eligible for any such representation, and that no notice has been given to plaintiff that the defendant Amalgamated or any other labor organization or person claims to be such representative or to be entitled to be recognized or dealt with as such by plaintiff.

The crux of the action is stated in paragraph 14 of the petition, which reads:

"Commencing on March 31, 1951, and continuously since that time, defendant Amalgamated, its several joint Boards and Locals together with its officers, agents and members, both as such and as individuals, have been and continue to be engaged, and the defendants are now engaged, in carrying forward a conspiracy to cause economic pressure to be directed against plaintiff with the intention and for the purpose and objective of thereby causing plaintiff to force sufficient of its eligible employees to become members of defendant Amalgamated, so that defendant Amalgamated may become the representative of its such employees for the purposes of collective bargaining with plaintiff, regardless of the desires of a majority thereof."

It is alleged further that the conspiracy is being carried out by the picketing of plaintiff's stores by persons who are not employees of plaintiff. There is no allegation of fraud or violence in connection with the picketing and it is not fairly to be inferred that the picketing is other than peaceful. The prayer of the petition is for a temporary restraining order, permanent injunction, and such other and further relief as is just and proper.

The parties are in agreement that the petition discloses a controversy affecting interstate commerce. Whether a federal question within the purview of the Labor Management Relations Act, Title 29 U.S. C. § 151 et seq., is presented, is in serious dispute. The defendants contend that the petition states a case involving an unfair labor practice as defined by Section 8(b)(1)(A) of the Act. This claim is vigorously opposed by plaintiff.

A second basic issue is presented. Plaintiff contends that even though a federal question under Section 8(b)(1)(A) of the Labor Management Relations Act is involved, this court is without jurisdiction of the subject matter. This latter question will be considered first. In dealing with this question it will be assumed for the

purpose of discussion, and only for that purpose, that the petition states a case involving unfair labor practices as defined by section 8(b)(1)(A) of the Labor Management Relations Act.

An examination of both statutory and case law reveals that the jurisdiction of District Courts in matters involving unfair labor practices affecting interstate commerce is now confined within the narrow compass of the few specific Congressional grants of jurisdiction to the courts of the United States in the Labor Management Relations Act. Under Title 28 U.S.C. § 1337, Districts Courts were granted original jurisdiction of civil actions under Acts of Congress regulating commerce. This general grant of jurisdiction was limited in labor disputes by the Norris-LaGuardia Act of March, 1932, 29 U.S.C.A. § 101 et seq. The purpose of that Act was to divest the courts of the United States of jurisdiction to interfere by injunction with labor disputes, except in a limited class of cases. Peaceful picketing such as is here involved is one of the acts expressly mentioned in Section 4 of the Norris-LaGuardia Act as not being subject to injunctive relief by federal courts. Jurisdiction of the federal courts over labor disputes was curtailed further by the National Labor Relations Act of 1935, Title 29 U.S.C. § 151 et seq. Under this Act the National Labor Relations Board was created and vested with original exclusive jurisdiction of the unfair labor practices therein defined. In enacting the Labor Management Relations Act of 1947 as an amendment to the National Labor Relations Act, Congress evinced no purpose to depart from the method by which unfair labor practices were to be redressed, except to the limited extent that jurisdiction was expressly conferred upon the District Courts. The extent of the limited jurisdiction of the District Courts to deal with unfair labor practices under the Labor Management Relations Act is set forth in Amazon Cotton Mill Co. v. Textile Workers Union of America, 4 Cir., 167 F.2d 183, 186, 187, as follows:

"Under section 10(j) of the act, 29 U.S C.A. § 160(j), the District Courts are expressly given jurisdiction to grant injunctions upon application of the Board after the latter has issued a complaint charging an unfair labor practice; under section 10(l) they are given jurisdiction to issue injunctions upon application of an officer or regional attorney of the Board in certain cases involving jurisdictional strikes and secondary boycotts; under section 208, 29 U.S.C.A. § 178, they are authorized to issue injunctions notwithstanding the provisions of the Norris-LaGuardia Act in certain cases involving strikes and lockouts affecting interstate commerce and imperiling the national health and safety, but only upon petition of the Attorney General following a report of a board of inquiry and direction by the President; and under section 303, 29 U.S.C.A. § 187, they are given jurisdiction of suits for damages arising out of jurisdictional strikes and boycotts. In no other cases does the act confer jurisdiction upon the District Courts to deal with unfair labor practices; and it is hardly reasonable to suppose that Congress intended the District Courts to have general power to grant injunctive relief, at the suit of either unions or employers, with respect to any unfair labor practice that might exist, while limiting with such meticulous care the cases in which those courts might grant injunctive relief upon petition of the Labor Board or the Attorney General acting under the direction of the President. *Expressio unius est exclusio alterius.*"

Since the decision of the Fourth Circuit Court of Appeals in the Amazon Cotton Mill case it is no longer open to question that a District Court is without jurisdiction, at the suit of either an employer or employees, to entertain an action for injunctive relief against unfair labor practices defined by the Labor Management Relations Act. The opinion of Judge Parker in that case demonstrates convincingly that Congress has committed exclusive jurisdiction of unfair labor practices affecting interstate commerce to the National Labor

Relations Board, which is adequately equipped to deal with such disputes, and that coordinate jurisdiction in such cases is not vested in the District Courts. The same view is expressed by the Eighth Circuit Court of Appeals in Amalgamated Association of Street Electric Railway and Motor Coach Employées, etc. v. Dixie Motor Coach Corp., 170 F.2d 902, wherein the court said:

"The federal District Courts are not vested with jurisdiction in cases involving or growing out of labor disputes to enjoin at the instance of private parties acts or conduct which may be alleged and found by the court to constitute unfair labor practices as defined in the Labor Management Relations Act."

In California Ass'n v. Building & Const. Tr. Council, 178 F.2d 175, 176, the Ninth Circuit Court of Appeals made the following statement:

"The National Labor Relations Board has exclusive primary jurisdiction, except as to authorized cessions to qualified state agencies, over administration of the Labor Management Relations Act where defined unfair labor practices are at issue, and therefore the District Court had no primary jurisdiction of a declaratory judgment action in which the ultimate concern of the parties was the existence or threat of unfair labor practices." See also Schatte v. International Alliance, etc., 9 Cir., 182 F.2d 158.

In Rock Hill Printing & Finishing Co. v. Berthiaume, D.C., 97 F.Supp. 451, 452, it was held:

"Suit instituted by an employer to enjoin and restrain union and its members from unlawful picketing, could not be removed to the Federal Court, since the Federal District Court only had original jurisdiction of an injunction suit at the instance of the National Labor Relations Board."

To the same effect is Dynamic Mfrs., Inc. v. Local 614, etc., D.C., 103 F.Supp. 651, and Walker v. United Mine Workers of America, D.C., 105 F.Supp. 608, 610. In the last cited case the court said:

"The National Labor Relations Board has exclusive primary jurisdiction over administration of Labor Management Relations Act where defined unfair labor practices are at issue, and federal trial courts lack jurisdiction to redress them by injunction or otherwise, except in instances specifically provided [in] National Labor Relations Act, § 10(j, l), as amended by Labor Management Relations Act of 1947, 29 U.S.C.A. § 160(j), (l); Norris-La-Guardia Act, 29 U.S.C.A. § 101 et seq."

Defendants cite and rely upon Reavis v. International Brotherhood of Electrical Workers, D.C., 101 F.Supp 542; State of Florida ex rel. Watson v. Bellman, 5 Cir., 149 F.2d 890; Kolkin v. Gotham Sportswear, D.C., 10 F.Supp. 682. But none of the foregoing cases are in point. Defendants also cite Davis v. Nunley (no official citation), affirmed without opinion in 168 F.2d 400. But it would appear from defendants' summary of the District Court's opinion in the last cited case that the court considered that the case was properly removed even though the District Court was without jurisdiction to pass upon the merits.

There can be no doubt that the overwhelming weight of authority holds that District Courts do not have jurisdiction in cases where injunctive relief only is sought against unfair labor practices defined by the Labor Management Relations Act. In view of this, a decision on plaintiff's motion to remand would be easily and quickly reached except for the claim insistently urged by defendants that the Sixth Circuit Court of Appeals in Direct Transit Lines v. Local Union No. 406, International Brotherhood of Teamsters, etc., 199 F.2d 89, held that a District Court has jurisdiction to issue an injunction at the instance of an employer to restrain the commission of unfair labor practices as defined by Section 8(b) (1) of the Labor Management Relations Act. That the Court of Appeals in its opinion in the Direct Transit Lines case made statements which, standing alone, are susceptible of the construction for which de-

fendants contend, may be conceded. However, a careful consideration of the entire *per curiam* opinion in the light of all the facts compels the conclusion that in the language of the opinion relied upon by defendants, the appellate court was at most merely expressing an opinion on a matter not necessary to a determination of the issue before it and which, under the peculiar facts of the case, seemed to the court to be appropriate. The case in the Court of Appeals was an original action in mandamus in which the plaintiff, Direct Transit Lines, sought a writ compelling District Judge Starr of the Western District of Michigan to remand the case before him to the Circuit Court of Kent County, Michigan. In denying the writ the appellate court indicated its approval of the District Judge's action in overruling two motions by plaintiff to remand the case to the state court. The original petition filed in the Michigan state court alleged that defendants were engaging in coercive and intimidating acts and conduct that interfered with plaintiff's business; that defendants threatened and intimidated plaintiff's employees, and that defendants employed a secondary boycott in an effort to compel plaintiff to coerce its employees to join defendants' labor union. In its original petition plaintiff sought injunctive relief against the described practices and also alleged that it had been damaged in the sum of $50,000 and prayed judgment in that amount. In denying the first motion to remand, District Judge Starr held that the facts alleged stated a case within the purview of the Labor Management Relations Act and "that as the complaint alleged monetary damages and requested monetary relief in the amount of $50,000 the action was clearly one for damages under Section 303 of the Labor Management Relations Act." Section 303 expressly confers jurisdiction upon District Courts in actions for damages brought thereunder. Plaintiff then filed an amended petition in the District Court withdrawing its claim and prayer for damages. Thereafter plaintiff filed a second motion to remand the case to the state court. In overruling a second motion to remand, Judge Starr placed his decision squarely upon the ground that the jurisdiction of the District Court which attached by reason of the claim for damages, could not be divested by a withdrawal of that claim in an amended petition filed in the District Court. Judge Starr's precise language is as follows:

"Therefore as this court had jurisdiction over this case at the time of removal because of the allegations of and prayer for damages, plaintiff's second motion to remand to the Circuit Court of Kent County is denied."

Although he retained jurisdiction of the case for the reason assigned Judge Starr recognized and expressly stated that the District Court was without jurisdiction at the instance of private parties to grant injunctive relief against unfair labor practices defined by the Labor Management Relations Act. He cited and referred to the Amazon Cotton Mill case and the other cases hereinabove cited. Judge Starr was of the opinion, however, that if the proof in the Direct Transit Lines case disclosed evidence of fraud or violence as those terms are used in the Norris-LaGuardia Act, he would have power to restrain such conduct. This was the state of the litigation in the District Court at the time Direct Transit Lines sought the writ of mandamus in the Court of Appeals. In its *per curiam* opinion the Court of Appeals [199 F.2d 90] noted that at the time of the removal of the case from the state court to the District Court petitioner "was demanding $50,000 damages, as well as injunctive relief" and approved the action of the District Judge "that the cause should not be remanded if it were properly removable upon the record as it stood at the time of the filing of the petition for removal." The appellate court also observed "and it was only after the district judge had first denied the motion to remand that the petitioner withdrew, by amendment, its demand for damages." Then follows that portion of the opinion upon which the defendants rely in support of their claim that the Court of Appeals announced the principle that District Courts have original jurisdiction to deal with unfair labor practices defined by Section 8(b) (1) of the Labor Management

Relations Act. The pertinent language of the opinion is as follows:

"Even apart from the claim of petitioner for damages as a basis for jurisdiction in the district court, we think the court had jurisdiction, inasmuch as the Labor Management Relations Act of 1947 is directly involved in the situation shown by the record to be a controversy involving interstate commerce. See especially section 8(b) (1) of the Labor Management Relations Act, 29 U.S.C.A. § 158(b) (1).

"Paragraph six of the complaint avers, *inter alia*, that the defendants have indulged in conduct intended to harass and hinder the petitioner company in the operations of its lawful business, in order to force it to coerce its employees to join the defendant union."

The balance of the opinion of the Court of Appeals is devoted to a discussion of and reference to decisions of the United States Supreme Court and of the Sixth Circuit itself dealing with the subject of an appellate court's appropriate exercise of its power to grant peremptory writs of mandamus. Nowhere in its opinion in the Direct Transit Lines case does the Court of Appeals refer to or discuss the decisions of the Fourth, Eighth and Ninth Circuits cited above, which hold that District Courts do not have original jurisdiction to deal with unfair labor practices under the Labor Management Relations Act. Nor is there any reference in the appellate court's opinion to the many District Courts' decisions to the same effect. No mention is made by the Court of Appeals of Judge Starr's views in which he concedes the validity and binding effect of the cases cited above. It cannot be supposed that in Direct Transit Lines the Court of Appeals adopted a position in opposition to the long line of well-considered cases on a subject as important and fundamental as the jurisdiction of District Courts in labor disputes affecting interstate commerce without any reference to or discussion of the cases expressing the contrary view. The history of the court and its uniform practice of referring to cases with which it fails to agree

forbid such an assumption. Whether in its opinion in Direct Transit Lines the Court of Appeals assumed, as did Judge Starr, that the District Court had jurisdiction to enjoin acts of violence or fraud, does not clearly appear. But whatever may be the reasons underlying the appellate court's undocumented statement that apart from the claim for damages the District Court had jurisdiction in the Direct Transit Lines case because Section 8(b) (1) of the Labor Management Relations Act was involved, it seems fair to conclude that this statement is without controlling effect upon this court under the radically different facts of the instant case.

In oral argument on the motion to remand, defendants asserted "We freely admit to remedy unfair labor practices the National Labor Relations Board is the exclusive agency." However, relying upon Pocahontas Terminal Corp. v. Portland Building, etc. Co., D.C., 93 F.Supp. 217, defendants contend that although this court does not have jurisdiction to grant the relief sought, it does have jurisdiction for the purpose of removing the case from the common pleas court. The same argument based upon the same authority was made in Walker v. United Mine Workers, D.C., 105 F.Supp. 608, 611. In rejecting the argument, Judge Stewart said:

"Further, it seems anomalous to hold, on one hand, that a District Court has original jurisdiction sufficient to grant the removal of a cause and then to hold, on the other, that the cause, once removed, must be dismissed by the District Court for the reason that it lacks jurisdiction of the cause and consequently has no power to grant the relief sought."

To say that a court is without jurisdiction to decide a case on its merits but has jurisdiction merely to remove the case is to state a contradiction. Jurisdiction to remove a case from state courts rests upon the District Court's jurisdiction to hear and decide the case so removed. Section 1441 of Title 28 U.S.C. authorizes the removal of cases "of which the district courts * * * have original jurisdiction". In General Investment Co. v. New

York Central R. R. Co., 271 U.S. 228, 230, 46 S.Ct. 496, 497, 70 L.Ed. 920, the Supreme Court said: "By jurisdiction we mean power to entertain the suit, consider the merits and render a binding decision thereon * * *." It is in this sense that the term "jurisdiction" is used in the removal statute. Defendants' argument posits the proposition that district courts may remove cases from state courts where the subject-matter of the controversy presents a federal question within the exclusive original jurisdiction of an administrative agency of the United States government. No such power is conferred by the removal statute. The statute does not contemplate a result that permits a district court to remove a case which it is required to dismiss for want of jurisdiction. Accordingly it is held that this court is without jurisdiction to entertain this suit, even though it be assumed that the petition states a case of unfair labor practice as defined in section 8(b) (1) (A) of the Labor Management Relations Act. Having been improvidently removed, this case must be remanded to the common pleas court of Cuyahoga County.

In view of the foregoing, it is unnecessary to decide the question whether the allegations of the petition state a case of unfair labor practices under section 8(b) (1) (A) of the Labor Management Relations Act. This is an issue to be determined by the state court. But in view of the extensive arguments submitted on this question, it may not be inappropriate to comment briefly thereon.

The petition in this case alleges that defendants are picketing plaintiff's stores and thereby exerting economic pressure upon plaintiff as an employer to compel it to coerce its employees to join defendants' union. Nowhere in the petition is it alleged that defendants are exerting pressure or coercion directly against the plaintiff's employees. Section 8(b) (1) (A) in its pertinent part reads:

"It shall be an unfair labor practice for a labor organization or its agents— (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 * * *."

A factual situation closely analogous to this case was presented in Goodwins, Inc. v. Hagedorn, 1951, 303 N.Y. 300, 101 N.E.2d 697, 699. In that case the defendant union was picketing plaintiff's store with the object of forcing the plaintiff's employees to recognize the defendant union as the sole collective bargaining agent. In its opinion in that case the Court of Appeals of New York made the following observations:

"In short, the defendant union is subjecting the plaintiff employers to economic pressure and is thereby injuring their business without justification in law. Coercion of that kind is clearly unlawful, Dorchy v. State of Kansas, 272 U.S. 306, 311, 47 S.Ct. 86, 71 L.Ed. 248, and in our judgment can be enjoined by the courts of this State. * * *

"Nor does the Federal Labor Management Relations Act (as we see it) disable our State courts from acting in the circumstances of this case. For one thing, the activity of the defendant union is not within any of the categories of union unfair labor practices denounced in subdivision (b) of section 8 of the Federal statute, U.S.C.A., tit. 29, § 158(b). * * *"

Of interest in this connection is the comment in 37 Cornell Law Quarterly, No. 3, p. 516, as follows:

"The activity complained of in Goodwins is similar to several unfair labor practices enumerated in Section 8(b), but the court seems undoubtedly correct in holding that it is not precisely covered. Section 8(b) (1) (A) makes it an unfair labor practice for a union to restrain or coerce employees in choosing bargaining representatives or in exercising their right to join unions or to stay out of them (except that a union may prescribe rules for membership). The picketing did not come within this section for the coercion was imposed on the employer, and not on the employees. The employer, not the employees, suffered economic loss from the picketing."

The views of the National Labor Relations Board on this question are also of interest. In United Brotherhood of Carpenters, etc. (1949) 81 NLRB 802, 808, the Board said:

"Indeed, it is especially significant to note, as legislative history shows, that Congress, in defining the unfair labor practice in Section 8(b) (1) in terms of restraint and coercion, expressly intended to reach, among other things, only such picketing as was accompanied by violence and like conduct, but not primary peaceful picketing." Cf. United Const. Workers, etc., (1951) 94 NLRB 1731; National Maritime Union (1948) 78 NLRB 971; NLRB v. Jarka Corp. of Philadelphia, 3 Cir., 1952, 198 F.2d 618, 621, 622.

So far as I know no federal court has held that indirect coercion of employees through pressure upon their employer unaccompanied by coercive action directly against the employees constitutes a violation of section 8(b) (1) (A).

In support of their argument to the contrary defendants seek to draw sustenance from the decision of the Sixth Circuit Court of Appeals in Direct Transit Lines, supra. However, it is to be noted that in Direct Transit Lines the Court of Appeals, indicating its opinion that section 8(b) (1) (A) was there involved, said:

"Paragraph six of the complaint avers, inter alia, that the defendants have indulged in conduct intended to harass and hinder the petitioner company in the operations of its lawful business, in order to force it to coerce its employees to join the defendant union." (Emphasis supplied.)

In addition to the above allegations in the petition filed in Direct Transit Lines there were averments charging that defendants attempted to intimidate and coerce plaintiff's employees into joining the union. Of these allegations District Judge Starr had this to say: "Plaintiff's allegation in its complaint that the defendants attempted unlawfully to intimidate and coerce the plaintiff's drivers into joining the defendants' union, if true, would be a violation of section 8(b) (1) (A) of the Labor Management Relations Act.

It is clear, therefore, that the petition in Direct Transit Lines contains allegations of acts of coercion and restraint of employees which are sufficient to bring that case within the express terms of section 8(b) (1) (A). The situation is different here. There is no allegation or suggestion in the petition filed in this case that plaintiff's employees have been interfered with in their employment or coerced and restrained by the defendants. Being distinguishable upon its facts, it is to be doubted that Direct Transit Lines has the precedential effect claimed for it by defendants.

An order may be made in accordance with the foregoing.