## AMALGAMATED CLOTHING WORKERS OF AMERICA ET AL. v. RICHMAN BROTHERS CO.

No. 173. Argued March 4, 7, 1955.—Decided April 4, 1955.

512

*William J. Isaacson* argued the cause for petitioners. With him on the brief was *Louis H. Pollak.*

By special leave of Court, *Philip Elman* argued the cause for the National Labor Relations Board, as *amicus curiae,* urging reversal. With him on the brief were *Solicitor General Sobeloff, David P. Findling, Dominick L. Manoli* and *Norton J. Come.*

*Luther Day* argued the cause and filed a brief for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

In *Weber* v. *Anheuser-Busch, Inc.,* 348 U. S. 468, decided last Monday on writ of certiorari to the Missouri Supreme Court, we considered the jurisdiction of a state court to enjoin conduct which in one aspect brought it within exclusive federal authority under the Taft-Hartley Act and in another constituted a violation of a state statute against restraint of trade. In this case we have to decide the question whether, under similar circumstances, a union has open to it, without resorting to the appellate procedures of the State and eventually of this Court, jurisdiction of a federal district court to enjoin the employer from pursuing his action in the state court.

Petitioner, an unincorporated association of clothing workers, was responsible for peaceful picketing of a number of respondent's retail stores, presumably to compel its factory employees to join the union. Respondent, an Ohio corporation engaged in the manufacture and sale of men's clothing in interstate commerce, filed suit in the Court of Common Pleas for Cuyahoga County, Ohio, alleging that the union's conduct constituted a common-law conspiracy as well as a statutory and common-law restraint of trade. It prayed for temporary and permanent injunctions. The union brought proceedings to

remove the case to the United States District Court for the Northern District of Ohio, claiming that the employer's petition alleged facts bringing the case within the original jurisdiction of the District Court as a civil action arising under the Taft-Hartley Act. 28 U. S. C. § 1337. That court remanded the action to the state court on the ground that if, as the union contended, the complaint in effect alleged a violation of § 8 (b)(1)(A) of the Taft-Hartley Act, under the decision in *Garner* v. *Teamsters Union,* 346 U. S. 485, only the National Labor Relations Board had jurisdiction of its subject matter. *Richman Brothers Co.* v. *Amalgamated Clothing Workers,* 114 F. Supp. 185, rehearing denied, 116 F. Supp. 800.

Upon remand, the union invoked the ground taken by the District Court in denying its jurisdiction in a motion to dismiss the action in the state court. This motion was denied without opinion. The union then filed this complaint in the same District Court seeking an injunction which would require the employer to withdraw the action commenced in the state court. Jurisdiction was based on 28 U. S. C. § 1337. This provision confers jurisdiction on federal courts over any civil action arising under any Act of Congress regulating interstate commerce. The union also relied on 28 U. S. C. § 1651, the all-writs section. The District Court held that under 28 U. S. C. § 2283, which prohibits federal injunctions against state court proceedings, it was without power to grant the requested relief, inasmuch as the action did not come within any of the exceptions to that general prohibition. The Court of Appeals for the Sixth Circuit unanimously affirmed, 211 F. 2d 449. The jurisdictional question is plainly important in this area of federal-state relations and we granted certiorari, 348 U. S. 813.

Subsequent to the affirmance by the Court of Appeals, the Ohio Court of Common Pleas ruled favorably on the employer's motion for a temporary injunction. *Rich-*

man Brothers Co. v. Amalgamated Clothing Workers, 51 Ohio Op. 145, 116 N. E. 2d 60.

1. Under the decision in Weber v. Anheuser-Busch, Inc., we may assume that the conduct in controversy is subject to whatever relief the Taft-Hartley Act may afford, and therefore is outside state authority. The question is whether a federal court may, before complaint has been entertained by the Board and at the request of one of the private parties, enjoin the attempt to secure relief through state proceedings.

We need not re-examine the series of decisions, prior to the enactment of Title 28 of the United States Code in 1948, which appeared to recognize implied exceptions to the historic prohibition against federal interference with state judicial proceedings. See Toucey v. New York Life Ins. Co., 314 U. S. 118. By that enactment, Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation. Former § 265 of the Judicial Code provided:

> "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." 36 Stat. 1162.

The 1948 enactment revised as well as codified. The old section was thus embodied in the new § 2283:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

In lieu of the bankruptcy exception of § 265, Congress substituted a generalized phrase covering all exceptions, such as that of the Interpleader Act, 28 U. S. C. § 2361, to be found in federal statutes. Two newly formu-

lated exceptions to the general prohibition deal with problems of judicial administration which had earlier been the subject of the series of decisions dealt with in the *Toucey* case. If confirmation of the comprehensive scope thus revealed on the face of the enactment were necessary, it is to be found in the Reviser's Notes, which state:

> "An exception as to Acts of Congress relating to bankruptcy was omitted and the general exception substituted to cover all exceptions." [1]

In the face of this carefully considered enactment, we cannot accept the argument of petitioner and the Board, as *amicus curiae*, that § 2283 does not apply whenever the moving party in the District Court alleges that the state court is "wholly without jurisdiction over the subject matter, having invaded a field preempted by Congress." No such exception had been established by judicial decision under former § 265.[2] In any event, Congress has left no justification for its recognition now. This is not a

---

[1] H. R. Rep. No. 308, 80th Cong., 1st Sess. A181. Petitioner and the Board, as *amicus curiae*, emphasize the statement in the Reviser's Notes that "the revised section restores the basic law as generally understood and interpreted prior to the Toucy [*sic*] decision." Even if taken to mean that, despite the revised wording, the section is to derive its content from decisions prior to 1948, these contain no precedent for the present proceeding. See note 2, *infra*. Moreover, in context it is clear that the quoted phrase refers only to the particular problem which was before the Court in the *Toucey* case.

[2] The statement in *Bowles* v. *Willingham*, 321 U. S. 503, 511, that "Congress thus preempted jurisdiction in favor of the Emergency Court to the exclusion of state courts. The rule expressed in § 265 which is designed to avoid collisions between state and federal authorities . . . thus does not come into play," must be read in the context of the scheme of the Emergency Price Control Act of 1942 (56 Stat. 23) and particularly the authority in that Act for resort by the Administrator of the Office of Price Administration to injunctive relief under the circumstances there presented. § 205 (a), 56 Stat. 33. It is also to be noted that this observation was made prior to the revision of 1948.

statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions.

We are further admonished against taking the liberty of interpolation when Congress clearly left no room for it, by the inadmissibility of the assumption that ascertainment of pre-emption under the Taft-Hartley Act is self-determining or even easy. As we have noted in the *Weber* case, "the areas that have been pre-empted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and bounds." 348 U. S., at 480. What is within exclusive federal authority may first have to be determined by this Court to be so.

2. We turn, therefore, to the specific exemptions contained in § 2283. The first of these permits an injunction to issue "as expressly authorized by Act of Congress." In the present case we are directed to no "express" authorization within even the most attenuated meaning of the term. Of course no prescribed formula is required; an authorization need not expressly refer to § 2283. But the only "express" authorization, in the freest use of the word, to be found in the Taft-Hartley Act does not help petitioner. Congress has provided an administrative agency to pass on claims that rights granted by the Act are denied or that restrictions imposed by the Act are disregarded. Only after the Board has found such claims to be well-founded and has formulated remedies for their vindication does the jurisdiction for review by the Court of Appeals come into being. However, injunctive relief or a temporary restraining order may be obtained by the Board from the appropriate District Court, pending final adjudication by the Board, "upon issuance of a complaint" by the Board or when there is "reasonable cause to believe" in the truth of a charge that a party "has

engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 8 (b)." Congress explicitly gave such jurisdiction to the district courts only on behalf of the Board on a petition by it or "the officer or regional attorney to whom the matter may be referred." § 10 (j), (l), 61 Stat. 149, 29 U. S. C. § 160 (j), (l). To hold that the Taft-Hartley Act also authorizes a private litigant to secure interim relief would be to ignore the closely circumscribed jurisdiction given to the District Court and to generalize where Congress has chosen to specify. To find exclusive authority for relief vested in the Board and not in private parties accords with other aspects of the Act. See *Amalgamated Utility Workers* v. *Consolidated Edison Co.,* 309 U. S. 261. Such was the authority recognized in *Capital Service, Inc.* v. *Labor Board,* 347 U. S. 501.

But the argument is made that to permit the state courts to proceed unchecked in their incursion upon a federally pre-empted domain dislocates the federal scheme as a whole. This argument is only a rephrasing of the suggestion that whenever Congress is found to have pre-empted a field by legislation § 2283 must yield. But its thrust is deeper in the particular circumstances of this case. If the employer's use of the judicial process of the State does not amount to an unfair labor practice, and if the Board is without power to seek an injunction before a complaint is filed with it, the federal mechanism will not be invoked and federally protected rights may be denied until the injunction is lifted. The employer, who might have brought a charge of an unfair labor practice before the Board, has chosen to ignore his remedy under the Taft-Hartley Act. The temporary injunction which has been issued is not, under Ohio law, appealable,[3] and

---

[3] A temporary injunction which merely serves to preserve the *status quo* pending the hearing on a request for a permanent injunction is not a final order appealable under §§ 2505.02, 2505.03 of Page's

the appellate procedures which will be available if a permanent injunction is issued are necessarily time-consuming. Thus, so the argument runs, unless the federal court can intervene, delay will not only undercut the legislative scheme, but opportunity for effective union activity may be diminished if not lost.

The assumption upon which the argument proceeds is that federal rights will not be adequately protected in the state courts, and the "gap" complained of is impatience with the appellate process if state courts go wrong. But during more than half of our history Congress, in establishing the jurisdiction of the lower federal courts, in the main relied on the adequacy of the state judicial systems to enforce federal rights, subject to review by this Court. With limited exceptions, it was not until 1875 that the lower federal courts were given general jurisdiction over federal questions.[4] During that entire period, the vindication of federal rights depended upon the procedure which petitioner attacks as so grossly inadequate that it could not have been contemplated by Congress. The prohibition of § 2283 is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between state and federal courts.

We cannot assume that this confidence has been misplaced. Neither the course of this case, nor the history of state court actions since the decision in *Garner* v. *Teamsters Union*, 346 U. S. 485, demonstrates recal-

Ohio Rev. Code (1954). *May Co.* v. *Bailey Co.*, 81 Ohio St. 471, 91 N. E. 183; *Tipling* v. *Randall Park Holding Co.*, 94 Ohio App. 505, 114 N. E. 2d 279.

[4] With the exception of the short-lived "Midnight Judges" Act of February 13, 1801, 2 Stat. 89 (repealed on March 8, 1802, 2 Stat. 132), the so-called federal specialties, and specific *ad hoc* grants of jurisdiction, enforcement of federal rights was confined to the state courts prior to the Act of March 3, 1875, 18 Stat. 470. See 13 Cornell L. Q. 499, 507–509.

citrance on the part of state courts to recognize the rather subtle line of demarcation between exclusive federal and allowable state jurisdiction over labor problems. In its effort to define what has been withdrawn from the States and what has been left them, the opinion in *Garner,* decided just last Term, was hedged with qualifications, even in a case which dealt only with state court enforcement of a state labor policy as such.

Misapplication of this Court's opinions is not confined to the state courts, nor are delays in litigation peculiar to them. To permit the federal courts to interfere, as a matter of judicial notions of policy, may add to the number of courts which pass on a controversy before the rightful forum for its settlement is established. A district court's assertion of equity power or its denial may in turn give rise to appellate review on this collateral issue. There may also be added an element of federal-state competition and conflict which may be trusted to be exploited and to complicate, not simplify, existing difficulties.

3. The exception to § 2283 which permits the District Court to issue injunctions "where necessary in aid of its jurisdiction" remains to be considered. In no lawyer-like sense can the present proceeding be thought to be in aid of the District Court's jurisdiction. Under no circumstances has the District Court jurisdiction to enforce rights and duties which call for recognition by the Board. Such nonexistent jurisdiction therefore cannot be aided.[5]

---

[5] We have been referred by petitioner to decisions in the lower federal courts under 28 U. S. C. § 1651 and its antecedents holding that the Court of Appeals may resort to writ of mandamus or prohibition "in aid of its jurisdiction" to prevent a district court from acting in a manner which would defeat the Court of Appeals' power of review. These decisions might be more relevant had the injunction been sought from the Court of Appeals. Only that court has power to

Insofar as protection is needed for the Board's exercise of its jurisdiction, Congress has, as we have seen, specifically provided for resort, but only by the Board, to the District Court's equity powers. Since the very presupposition of this proceeding is that jurisdiction of the subject matter of which the employer complained was in the Board and not in the state court, any aid that is needed to protect jurisdiction is the aid which the Board may need for the safeguarding of its authority. Such aid only the Board could seek, and only if, in a case pending before it, it has satisfied itself as to the adequacy of the complaint.

It is urged that an employer may deliberately prevent Board action by going into a state court. For one thing, it has not yet been determined that, if an employer resorts to a state court in relation to conduct that is obviously taken over by the Taft-Hartley Act and outside the bounds of state relief, it may not under appropriate circumstances give ground for a finding of an unfair labor practice.[6] In any event, if resort to a state court

review decisions of the Board. In any event, it has never been authoritatively suggested that this example of injunctive aid to a potential jurisdiction, which finds roots in traditional concepts of the relationship between inferior and superior courts of the same judicial system, has any relevance where the offending action sought to be enjoined is insulated by two intervening and essentially unrelated systems, one of an administrative rather than judicial nature, the other the manifestation of a distinct sovereign authority.

[6] In *W. T. Carter and Brother*, 90 N. L. R. B. 2020, the Board has held that an employer's action in procuring a state court injunction prohibiting federally protected employee activities constitutes a violation of § 8 (a)(1) of the Act which designates as an unfair labor practice an employer's restraint of employees in the exercise of rights guaranteed under § 7. The Board now argues that this case is limited to situations in which the employer's resort to the state court is part of a bad faith scheme to defeat union organization and the underlying union conduct which has been enjoined is protected under the Taft-Hartley Act.

may not be circumvented by the power of the Board to entertain such a complaint, we are bound to repeat that, insofar as a penumbral region must remain between state and federal authority touching industrial relations until finally clarified by definitive rulings here or further legislation by Congress, state litigation must, in view of § 2283, be allowed to run its course, including the ultimate reviewing power in this Court.

*Affirmed.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS concur, dissenting.

There can be no doubt, apart from the limitations of 28 U. S. C. § 2283,[1] that the District Court had jurisdiction under 28 U. S. C. § 1337 [2] to issue the injunction sought by the union in this case. This Court so held in *Capital Service* v. *Labor Board*, 347 U. S. 501. It is true that the plaintiff in *Capital Service* was the National Labor Relations Board, but § 1337 is general in terms and makes no distinction between public and private plaintiffs.

Thus, as in *Capital Service,* the question is whether § 2283, on the facts of this case, precludes the exercise of

---

[1] Section 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

[2] Section 1337 provides:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

jurisdiction under § 1337. In *Capital Service,* the Court stated (347 U. S., at 505, n. 2):

> "In view of our ruling, we find it unnecessary to consider whether, apart from the specific exceptions contained in § 2283, the District Court was justified in enjoining this intrusion on an exclusive federal jurisdiction. Cf. *Bowles* v. *Willingham,* 321 U. S. 503, 510–511."

That question is now here.

In the *Willingham* case, a landlord had obtained a state court injunction restraining the Price Administrator from issuing certain rent orders under the Emergency Price Control Act. The Price Administrator brought an action in a federal district court to enjoin enforcement of the state court injunction. Exclusive jurisdiction to determine the validity of rent orders, the Administrator argued, was vested by Congress in the Emergency Court of Appeals. This Court upheld the Administrator's position. As one ground for its decision that § 265 of the Judicial Code [3]—the predecessor of § 2283—was no bar to the injunction sought by the Administrator, the Court stated (321 U. S., at 511):

> "Congress thus preempted jurisdiction in favor of the Emergency Court to the exclusion of state courts. The rule expressed in § 265 which is designed to avoid collisions between state and federal authorities (*Toucey* v. *New York Life Ins. Co., supra*) thus does not come into play."

---

[3] Section 265 provided:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." 36 Stat. 1162.

Thus stood the law in 1948 when § 265 was succeeded by the present § 2283.[4]

Contrary to the suggestion of the majority opinion, § 2283 is not broader in scope than its predecessor, § 265. Indeed, the express purpose of § 2283 was to contract—not expand—the prohibition of § 265. The Revisers stated that "An exception as to Acts of Congress relating to bankruptcy was omitted and the general exception substituted *to cover all exceptions*."[5] (Italics added.) The only substantive change noted by the Revisers was an overruling of this Court's decision in *Toucey* v. *New York Life Ins. Co.*, 314 U. S. 118. The *Toucey* decision held that § 265 barred a federal court from enjoining a state court *in personam* proceeding involving a claim previously adjudicated by the federal court. The Revisers, expressly approving the *Toucey* dissent, stated that "the revised section restores the basic law as generally understood and interpreted prior to the Toucy [*sic*] decision. Changes were made in phraseology."[6] By enacting § 2283, Congress thus rejected the *Toucey* decision and its philosophy of judicial inflexibility.[7] However imprecise may be the language of § 2283, its legislative history makes it abundantly clear that the provision was not intended to repeal pre-existing exceptions to § 265.

To read § 2283 literally—as the majority opinion does—ignores not only this legislative history but also over a century of judicial history.[8] In addition, for the reasons

---

[4] See also *Hale* v. *Bimco Trading Co.*, 306 U. S. 375, 378; *Wells Fargo & Co.* v. *Taylor*, 254 U. S. 175, 183.

[5] H. R. Rep. No. 308, 80th Cong., 1st Sess., p. A181.

[6] *Id.*, p. A182.

[7] See Moore's Commentary on the U. S. Judicial Code (1949) 407, 410; Note, 48 Nw. U. L. Rev. 383 (1953).

[8] See Hart and Wechsler, The Federal Courts and The Federal System (1953), 1075–1076; Moore's Commentary on the U. S. Judicial Code (1949) 395–407, 410.

pointed out by MR. JUSTICE DOUGLAS in his dissenting opinion, such a literal interpretation seriously frustrates a comprehensive regulatory scheme established by Congress for the resolution of the kind of labor dispute involved here. The Board, although clearly having exclusive jurisdiction of the subject matter, cannot adjudicate the dispute as long as the employer does not file an unfair labor practice charge; and the employer has no incentive to do so as long as the state court injunction is outstanding. I would reverse.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." So reads 28 U. S. C. § 2283. So read, apart from exceptions not relevant here, former § 265 of the Judicial Code.

The purpose of the law, as explained in *Oklahoma Packing Co.* v. *Gas Co.*, 309 U. S. 4, 9, was "to prevent needless friction between state and federal courts." It is, however, construed and applied today in a way which can only defeat a federal regulatory scheme. For today's decision allows state courts to intrude in a domain where the federal agencies, *i. e.*, the National Labor Relations Board and the District Court, have been granted primary and exclusive jurisdiction, without leaving the aggrieved party any effective relief.

This is not a case where the state court has concurrent jurisdiction with the federal agencies. The matter on which the state court takes hold has been pre-empted by the Congress and placed as firmly and completely in the

federal domain as if Congress by express words had forbidden state courts to intrude. The addition of an express exception to § 2283 would not make the congressional purpose any clearer.

Where Congress has made clear that federal agencies have exclusive jurisdiction of a controversy, that legislation should be taken to qualify § 2283 *pro tanto*. That has been the view up to this time. The Removal Acts, starting with 1 Stat. 73, 79, allowed cases to be removed from state to federal courts, and provided that a case once removed passed beyond the jurisdiction of the state courts. Those Acts were construed to qualify the predecessor of § 2283. *Dietzsch* v. *Huidekoper,* 103 U. S. 494; *Madisonville Traction Co.* v. *Mining Co.,* 196 U. S. 239, 245. The same construction was given an Act of 1851 which limited the liability of shipowners and provided that, after a shipowner transfers his interest in the vessel to a trustee for the benefit of the claimants, "all claims and proceedings against the owner or owners shall cease." 9 Stat. 635, 636. The Court held in *Providence & N. Y. S. S. Co.* v. *Hill Mfg. Co.,* 109 U. S. 578, 600, that, despite the predecessor to § 2283, the Limited Liability Act ousted the state courts, since otherwise the Act would be thwarted.

Those cases showed no clearer need for the qualification of § 2283 *pro tanto* than does the Taft-Hartley Act.

The Court has been ready to imply other exceptions to § 2283, where the common sense of the situation required it. Thus, if the federal court first takes possession of a *res,* it may protect its control over it, even to the extent of enjoining a state court from interfering with the property. That result flies in the face of the literal words of § 2283. Yet the injunction is allowed to issue as the preferable way of avoiding unseemly clashes between state and federal authorities. See *Hagan* v. *Lucas,* 10 Pet. 400, 403; *Kline* v. *Burke Constr. Co.,* 260 U. S. 226,

229, 235. Another illustration, as THE CHIEF JUSTICE points out, is *Bowles* v. *Willingham*, 321 U. S. 503, where the case for exclusive jurisdiction of the federal authorities was no stronger than the one now presented.

A like exception is needed here, if the state suit is not to dislocate severely the federal regulatory scheme. Under the present decision, an employer can move in the state courts for an injunction against the strike. The injunction, if granted, may for all practical purposes settle the matter. There is no way for the union to transfer the dispute to the federal Board, for it seems to be assumed by both parties that the employer has committed no unfair labor practice. By today's decision the federal court is powerless to enjoin the state action. The case lingers on in the state court. There can be no appeal to this Court from the temporary injunction. *Building Union* v. *Ledbetter Co.*, 344 U. S. 178. It may take substantial time in the trial court to prepare a record to support a permanent injunction. Once one is granted, the long, drawn-out appeal through the state hierarchy and on to this Court commences. Yet by the time this Court decides that from the very beginning the state court had no jurisdiction, as it must under the principle of *Garner* v. *Teamsters Union*, 346 U. S. 485, a year or more has passed; and time alone has probably defeated the claim.

That course undermines the federal regulation; it emasculates the federal remedy; it allows one party to a labor-management controversy to circumvent the law which Congress enacted to resolve these disputes.

The federal regulatory scheme cries out for protection against these tactics of evasion. No one is in a position to seek the protection of the federal court, except the federal Board or a party to the dispute who is aggrieved. Either should be allowed standing under the principle of *Capital*

*Service, Inc.* v. *Labor Board,* 347 U. S. 501, to invoke the jurisdiction of the federal court. Certainly a suit to protect the exclusive jurisdiction of federal agencies under the Taft-Hartley Act is a suit "arising under any Act of Congress regulating commerce" within the meaning of 28 U. S. C. § 1337. See *Capital Service, Inc.* v. *Labor Board, supra,* at 504.