956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Ralph BEDEL, Trustee, Quality Company Employee Profit
Sharing Plan, On behalf of said Plaintiff and
Other acquirers and purchasers of D.H.
Baldwin Company Company
Debentures due 1994,
Plaintiffs,
Jack F. Ehrich; June E. Ehrich, Plaintiffs-Appellees,
v.
Morley P. THOMPSON, et al., Defendants,
Edward D. Jones & Company, Defendant-Appellant.
 
 No. 91-3448.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1992.
 Before MILBURN and RYAN, Circuit Judges, and ZATKOFF, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Edward D. Jones & Company appeals the district court's denial of its motion to enforce an injunction in this action brought under federal securities law. The principal issue presented for review is whether the district court erred in refusing to enforce an injunction restraining plaintiffs' state court proceedings in South Dakota. For the reasons that follow, we affirm.
 
 I.
 
 2
 This appeal is related to the collapse of the Baldwin-United Corporation, a large financial services conglomerate headquartered in Cincinnati, Ohio. D.H. Baldwin, Inc. was a principal subsidiary of Baldwin-United.
 
 
 3
 On or about December 17, 1982, as a result of solicitations on behalf of defendant Edward D. Jones & Company, plaintiffs Jack and June Ehrich purchased $10,000 worth of debentures in D.H. Baldwin, which were due in December 1994. In the fall of 1983, Baldwin-United filed for bankruptcy and plaintiffs' debentures became worthless.
 
 
 4
 As a result of the collapse of Baldwin-United, a large number of legal actions were commenced throughout the United States in 1982 and 1983. These actions consisted of representative and derivative actions brought by purchasers and holders of Baldwin-United and D.H. Baldwin securities. All these actions were eventually consolidated into three separate cases in the United States District Court for the Southern District of Ohio.[2]
 
 
 5
 This case involves the Bedel action, which was commenced on December 13, 1983, on behalf of the purchasers of D.H. Baldwin debentures due in 1994. On September 16, 1986, the district court preliminarily approved the stipulations of settlement which had been agreed upon by the parties to the Stoller and Bedel actions.[3] The preliminary order specifically provided that the settling plaintiffs would give notice to the members of the Bedel and Stoller classes. The notice consisted of mailing of copies of the notice of settlement to all persons whose names appeared in the records and books of Baldwin-United and D.H. Baldwin as well as notice by publication for two consecutive weeks in two newspapers, viz., in the Wall Street Journal and Cincinnati Enquirer. The order also found that this would constitute the best notice practicable under the circumstances to members of the Bedel and Stoller classes.
 
 
 6
 In December of 1986, the District Court entered a final order in the Bedel and Stoller actions which provided in pertinent part that each member of the certified class, except the opt-outs, would be enjoined from asserting any representative, derivative or other claim which was or could have been asserted against the settling defendants and their privies. The district court's order also explicitly found that each prospective member of the class had been given the best possible notice.
 
 
 7
 Two years later, on or about November 8, 1988, plaintiffs instituted an action against defendant Edward D. Jones & Co. in the Third Judicial Circuit Court of South Dakota. This action included claims involving the purchase of D.H. Baldwin debentures as well as unrelated claims involving an oil and gas lease. Defendant Edward D. Jones & Co. filed an answer in the South Dakota court which asserted res judicata as an affirmative defense, on the ground that the Ehrichs were barred from pursuing their claims involving the D.H. Baldwin debentures by the terms of the final order in the Bedel and Stoller actions.
 
 
 8
 In March 1989, defendant filed a motion to dismiss and a motion for partial summary judgment on the Baldwin claim with the South Dakota court, again asserting that the doctrine of res judicata barred the claim based on the final order in the class action. Plaintiffs opposed the motion, presenting evidence indicating that they did not receive notice of the Baldwin class action.
 
 
 9
 On July 3, 1989, the South Dakota Circuit Court issued an opinion denying both the motion to dismiss and the motion for partial summary judgment. The South Dakota court ruled that a question of fact existed as to whether plaintiffs had been given notice of the class action, which precluded the grant of a motion for summary judgment. Specifically, the South Dakota court relied on the affidavit of Cecilia Paulino who stated that she was an employee of FRG Information Systems Corporation, which was appointed as claims administrator for the class action. In her affidavit, Paulino stated that on October 27, 1986, FRG mailed 16,992 copies of the notice of settlement, but that plaintiffs were not on the list of individuals receiving such notice. Relying on this evidence, the South Dakota court concluded that a question of fact existed as to whether plaintiffs received the best notice practicable of the class action. The state court concluded that if plaintiffs did not receive the best notice practicable, then the due process requirements that must be established in order to give a decision in a class action binding effect in another action would not be present with regard to plaintiffs.
 
 
 10
 Following the denial of its summary judgment motion, defendant opposed all discovery requests made by plaintiffs concerning the Baldwin debentures. In August 1990, after the South Dakota court overruled its objections to discovery, defendant filed a motion in the United States District Court for the Southern District of Ohio seeking enforcement of the injunction in the final order of the Bedel class action. Following a hearing, the district court denied the motion to enforce the injunction. Among the evidence presented at the hearing on the motion to enforce the injunction was the testimony of Michael Kohn. Kohn testified that he was counsel for the plaintiffs in the Bedel class action and that in that capacity his office sent out copies of the notice of the class action to individuals who were potential plaintiffs in the action. Kohn also testified that he had no record of sending a copy of the notice to plaintiffs.
 
 
 11
 In its order issued on August 28, 1990, the district court found that plaintiffs were members of the class certified in Bedel and that the final order in the Bedel class action was entitled to enforcement. However, the court concluded that the final order in the Bedel class action was subject to collateral attack for lack of jurisdiction, and that the binding effect of the final order in the class action upon plaintiffs was best determined in the South Dakota court action. Thereafter, defendant sought reconsideration of the district court's order and also filed a notice of appeal prior to the district court's rendering a decision on the motion for reconsideration. On November 23, 1990, the district court denied the motion for reconsideration and issued a more detailed opinion concerning its reasons for declining to enforce the injunction.
 
 
 12
 In its opinion, the district court again concluded that plaintiffs were Bedel class members and that their names did appear in the record of Baldwin-United and/or D.H. Baldwin. However, the district court also found that the evidence presented at the hearing on the motion to enforce the injunction showed that the preliminary order of the court was not followed and that the named plaintiffs failed to notify the Ehrichs by mail. The district court found that if plaintiffs were not given notice by mail, then issues as to whether plaintiffs were given sufficient notice of the class action as it had ordered and whether the final order of the district court in the class action has res judicata effects on plaintiffs' claims needed to be resolved. The district court further found that these issues were raised in the South Dakota court prior to the filing of the motion to enforce the injunction in the district court and that both courts had concluded that an evidentiary hearing was required with regard to the matter. The district court then concluded: (1) that either the district court or the South Dakota court were well equipped to hold an evidentiary hearing on the issue of whether plaintiffs were properly notified of the class action; and (2) that judicial economy dictated that the issues of whether plaintiffs had received sufficient notice should be resolved in the South Dakota court because the South Dakota court action would continue on other issues even if the final order in the Bedel action were enforced.
 
 
 13
 Subsequently, defendant filed a timely notice of appeal from the district court's reconsideration order. While this order was on appeal, the district court entered an additional order in response to a Rule 60(b) motion filed by defendant. That order indicated that the district court was inclined to grant the Rule 60(b) motion, which would have the effect of vacating its order of August 28, 1990, and would make the later, more detailed reconsideration order of November 23, 1990, the final order of the district court. Upon review, in light of the order entered by the district court in response to defendant's Rule 60(b) motion, this court remanded the case to the district court in order that the district court could vacate its original order and enter the reconsideration order as its final order. On April 16, 1991, the district court entered an order making the order of November 23, 1990, its final order. This timely appeal followed.
 
 II.
 A.
 
 14
 The district court did not abuse its discretion in denying enforcement of the injunction set forth in its final order, so as to permit the South Dakota court to determine the res judicata effects of the final order with respect to plaintiffs. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard. See Black Law Enf. Officers Ass'n v. City of Akron, 824 F.2d 475, 479 (6th Cir.1987). In the present case, the district court neither relied on clearly erroneous findings of fact, not did it improperly apply the law.
 
 B.
 
 15
 Defendant argues that the district court erred in failing to enforce the existing injunction in the Bedel class action set forth in its final order of December 1986. On the other hand, plaintiffs argue that the district court acted properly in refusing to enjoin the ongoing South Dakota state court proceedings.
 
 
 16
 In their characterization of this case, the parties have missed the mark. The real issue in this case is whether plaintiffs received notice of the proposed settlement in the class action as well as notice of their right to opt out of the proposed settlement. As will be discussed below, if plaintiffs received notice of the proposed settlement, then they are part of the certified class of plaintiffs in the Bedel class action, and the final order of December 1986 would bar their claims in the South Dakota action on the grounds of res judicata and collateral estoppel. Also, the injunction in the final order of the Bedel class action would apply to them. If, however, plaintiffs did not receive notice of the proposed settlement and their right to opt out of the settlement, then they are not part of the certified class of plaintiffs in the Bedel action, and the final order of December 1986 has no res judicata or collateral estoppel effects on their South Dakota state court action.
 
 
 17
 After its motion for summary judgment was denied in the South Dakota court, defendant sought enforcement of the injunction in the district court which had issued the injunction as part of the final order of December 1986. A court has the inherent authority to enforce its own injunctive decree. See United States v. Hall, 472 F.2d 261, 267 (5th Cir.1972). The mandate of an injunction issued by a federal district court runs throughout the entire nation. See Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 451 (1932). A violation of an injunctive order is cognizable in the court which issued the injunction, no matter where the violation may have occurred. See Stiller v. Hardman, 324 F.2d 626, 628 (2d Cir.1963). Enforcement of the injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order. See Leman, 284 U.S. at 452. Thus, the district court has the power to enforce the injunction in its final order of December 1986.
 
 
 18
 As earlier indicated, the real question presented by this appeal, however, is whether plaintiffs are among the certified class of plaintiffs bound by the final order of December 6, 1986, and whether the final order has res judicata and collateral estoppel effects upon the South Dakota court action. A judgment in a class action binds the class members where the class had been adequately represented or where they actually participated in the litigation. However, an absent member will not be bound if he proves a failure of due process, i.e., if he shows that the procedure did not adequately insure the protection of his interests. See Hansberry v. Lee, 311 U.S. 32, 40-43 (1940).
 
 
 19
 In this case, the district court correctly concluded that the evidence presented to it was sufficient to raise a question of fact as to whether plaintiffs were accorded due process with regard to the settlement of the class action. Specifically, the evidence before the district court raises a doubt as to whether plaintiffs received notice by mail of the class action and of their right to opt out of the proposed settlement.
 
 
 20
 In both the preliminary and final order, the district court certified the Bedel class action pursuant to Federal Rule of Civil Procedure 23(b)(3). Once it has been determined that a class action is to be maintained pursuant to Rule 23(b)(3), Fed.R.Civ.P. 23(c)(2) provides that each class member shall be advised that he has the right to exclude himself from the action on request or to enter an appearance through counsel and, further, that the judgment, whether favorable or not, will bind all class members not requesting exclusion. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172 (1974). Under Rule 23(c)(2), the court is required to direct to class members the best notice practicable under the circumstance including individual notice to all members who can be identified through reasonable effort. Id. Further, the notice requirement of Rule 23(c)(2) is mandatory, not merely discretionary, and it cannot be waived in a particular case. Id., 417 U.S. at 176. Thus, in class actions certified pursuant to Rule 23(b)(3), the judgment includes all those found to be members of the class who have received notice and who have not requested exclusions. American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 548 (1974) (emphasis added). Until class certification is followed by notice, the members of the potential class are passive beneficiaries with no duty to take note of the suit. See West v. Capitol Fed. Sav. and Loan Ass'n, 558 F.2d 977, 980 (10th Cir.1977).
 
 
 21
 It is undisputed between the parties that plaintiffs were potential class plaintiffs in the Bedel class action. Moreover, the evidence presented to the district court did show that the identity of plaintiffs was discoverable through reasonable effort. The record contains the affidavit of Craig Stark, a manager employed with defendant, who stated that in November 1986, plaintiffs maintained an active brokerage account with defendant, and plaintiffs' current address was in defendant's computerized files. Therefore, plaintiffs were entitled to individual notice under the dictates of Rule 23(c)(2), which, in accordance with the preliminary order in the Bedel action, meant notice by mail. However, as described above, the evidence before the district court showed that plaintiffs' names were not on the list of potential plaintiffs to whom the required notice was mailed. Therefore, the district court correctly concluded that a question of fact existed as to whether plaintiffs were bound by the final order in the Bedel class action, and the district court properly refused to enforce the injunction in the final order until an evidentiary hearing had been held with regard to the matter.
 
 
 22
 Moreover, the district court did not abuse its discretion in permitting the South Dakota court to determine whether or not plaintiffs received notice of the class action. The district court noted that plaintiff and defendant were engaged in an ongoing state court action in South Dakota, and that defendant had filed an answer and asserted the affirmative defense of res judicata in the South Dakota action, but had not sought enforcement of the injunction in the final order until after an adverse ruling. The district court further correctly noted that even if it held the evidentiary hearing and decided the issue in defendant's favor, thereby enforcing the injunction, that action would not end the South Dakota action. Thus, the district court concluded that judicial economy dictated that the issue be resolved in the ongoing state court litigation. The district court did not err in this regard. State courts are presumed competent to rule on issues of federal law. See Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 517-19 (1955). In addition, nothing in the opinion of the South Dakota court which denied defendant's motion for summary judgment shows that court is unwilling to find that the district court's order bars the subsequent state court action provided the requirements of due process are met.
 
 C.
 
 23
 Finally, defendant argues that if the injunction in the final order of the Bedel class action is not enforced, it will be deprived of the benefit of the bargain reached between the parties in the settlement agreement to the class action. Defendant also asserts that judicial economy requires enforcement of the injunction because nonenforcement of the injunction will result in additional litigation. This argument is misplaced. First, nothing in the concept of judicial economy would require that plaintiffs be bound by a class action judgment to which they were not properly made parties. Second, permitting the South Dakota action to go forward will not deprive defendant of the benefits of his bargain in the settlement to the Bedel class action, nor will this unique factual situation encourage other lawsuits. What defendant bargained for in the settlement agreement in the Bedel action was a bar to future legal actions against it by the certified class plaintiffs in the Bedel class action who did not exercise their right to opt out. If it is determined that plaintiffs did not receive notice, then they were never bound by the action and a bar to their legal action in South Dakota was not among the benefits bargained for by defendant in the settlement agreement.
 
 III.
 
 24
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 *
 Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 These three cases were the Bedel action, Bedel v. Thompson, No. C-1-83-1990; the Stoller action, Stoller, et al. v. Baldwin United Corporation, et al., No. C-1-82-1438; and MDL 606, In re D.H. Baldwin Debentures due 1994 Securities Litigation
 
 
 [3]
 The preliminary order in the Bedel and Stoller actions which approved the settlement calling for the establishment of funds for the payment of claims is set forth in Stoller v. Baldwin-United Corp., 650 F.Supp. 341 (S.D.Ohio 1986) (order)