MANUFACTURERS' CASUALTY INSURANCE COMPANY, A CORPORATION, PLAINTIFF AND DEFENDANT ON THE COUNTER-CLAIM-RESPONDENT, v. MYER L. MINK, DEFENDANT AND COUNTER-CLAIMANT, APPELLANT, v. MANUFACTURERS' FIRE INSURANCE COMPANY, A CORPORATION, DEFENDANT ON THE COUNTER-CLAIM, RESPONDENT.

Submitted October 6, 1942—Decided February 23, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the defendant and counter-claimant-appellant, *Harry Green.*

For the defendant on the counter-claim-respondent and plaintiff and defendant on the counter-claim-respondent, *Budd & Larner.*

The opinion of the court was delivered by

PORTER, J. This appeal is from a judgment in favor of the plaintiff Manufacturers' Casualty Insurance Company on both counts of its complaint and against the defendant on his counter-claim against the plaintiff and against the Manufacturers' Fire Insurance Company which was made a defendant on said counter-claim. These two corporations were affiliated with each other and were treated at the trial and on the briefs as one company. Their interest in this case seems to be identical and they will be considered and referred to hereafter as the plaintiff or the company.

It appears that the defendant Mink was engaged in business as an insurance agent and broker and that on March 15th, 1937, he entered into an agreement with the plaintiff to act as its agent in the writing and placing of insurance contracts and in the collection of the premiums due thereon. On November 24th, 1937, he was indebted to the plaintiff in connection with his agency for premiums collected in the sum of $3,097.77. On that date he gave to plaintiff his promissory note for that sum due on demand and made an agreement with plaintiff whereby he was to continue to represent the company and to remit all premiums collected by him to the company when received, that he was to receive a drawing account of $50 weekly and that his commissions on the premiums collected would be charged against the drawing account and the said indebtedness.

It further appears that on April 25th, 1939, it was found that he had not remitted all premiums collected and that the amount not accounted for was the sum of $1,374.78. At that time the commissions credited to him on premiums accounted for less his drawing account reduced his indebtedness on the $3,097.77 note to the sum of $498.15. His total indebtedness to the plaintiff at that time was $1,872.93. These facts are not in dispute except that the defendant claims that he then made a new agreement with plaintiff whereby the debt was discharged which is the subject-matter of his counter-claim.

The first count in the complaint is for $498.15, the balance claimed due on the note for $3,097.77. The second count is

for $1,374.78 and is grounded on the allegation that this sum was "willfully, maliciously and fraudulently misappropriated and converted" to his own use. To both counts defendant counter-claims. He says that after April 25th, 1939, and until he was discharged without cause on July 21st, 1939, he was continued in his employment with plaintiff and that on May 19th, 1939, a verbal agreement was reached between them whereby the entire indebtedness was canceled upon his assigning to plaintiff his interest in his insurance business in force with the company subject to be reassigned to him upon his payment of the debt within six years and plaintiff continuing to employ him as a salesman for one year at a salary of $45 weekly and commissions on new business, &c. He says that after his discharge the plaintiff solicited his insurance accounts and thereby obtained a large part of his business.

The only issue in dispute in the case seems to be whether or not an agreement was entered into and breached by the plaintiff as alleged by the defendant in his counter-claim.

The plaintiff admits that it agreed to continue the defendant in its employ under terms and conditions to be arranged by the manager of its Newark office and that pending the conclusion of negotiations of the terms of the agreement he was employed under certain definite instructions as to his duties. A written agreement was prepared by plaintiff's Newark manager and submitted to defendant who found it unsatisfactory and refused to sign it. Plaintiff says that defendant having disregarded instructions as to his employment and not having accepted the terms of the proposed contract was dismissed on July 21st, 1939.

There was presented by the testimony a clear cut issue of fact on this question and the learned trial court properly so held and did not commit error in refusing to grant defendant's motion for a judgment of nonsuit. The appellant argues that the court erred in refusing to charge the jury as requested with respect to the second count. The request was as follows: "The second count of the complaint is based upon conversion of funds. Even if you find that the defendant Mink was not released as aforesaid, your verdict must be for him on the

second count unless you find that he was obliged by an agreement to keep the identical moneys separate and apart from all moneys and to turn over that identical money to the Manufacturers. Where the contract does not require the agent to keep the money collected intact, he cannot be held liable for conversion." We think that it was not error to have refused to so charge. The written contract of agency between the parties which was in evidence as "P-1" contained this clause—"7. The Agent shall hold all of each and every premium collected as the property of the company, and as a fiduciary trust, until the amount of such premium less the per centum thereof as hereinbefore allowed the Agent as a commission thereon, shall have been remitted to the Company." We do not think that this provision can properly be construed to mean that the agent was required to keep the identical money collected intact and to turn it over to the company in that form as argued by appellant. He was a fiduciary and as such possessed of money belonging to his principal. He was under the duty of accounting for the moneys collected for it by him less his commissions. Failing to do so was a wrongful act and constituted conversion and gave rise to an action in tort. *Cf. Farrelly* v. *Hubbard,* 148 *N. Y.* 592; *Pratt* v. *Brewster,* 52 *Conn.* 65; *Jackson* v. *Moore,* 87 *N. Y. S.* 1101; *Britton* v. *Ferrin* (*N. Y.*), 63 *N. E. Rep.* 954. Appellant probably bases this request to charge on the assumption that the second count is founded on trover and conversion. We think not. Conversion is the wrongful act and trover is the form of remedy for the recovery of damages for the personal property converted. 65 *C. J.* 11 and 12. An action *in assumpsit* will lie by a principal against his agent to recover money which he has embezzled and that is the ordinary form of action used. 2 *C. J.* 886. But besides being a breach of contract the act of conversion with which the defendant is charged in the second count makes him liable also in tort. 1 *C. J.* 1023; *Rauh* v. *Stevens,* 21 *Ind. App.* 650; 52 *N. E. Rep.* 997; *Miller* v. *John,* 208 *Ill.* 173; 70 *N. E. Rep.* 27.

Appellant argues that the trial court committed error in refusing to charge his request to the effect that plaintiff had

no right to solicit insurance business from defendant's customers. The court not only refused so to charge but instructed the jury that there being no contract between the parties to the contrary the company had a right to solicit insurance from the defendant's customers. There was no proof of any contract respecting this matter nor any proof of any usage or custom in the business concerning it. We conclude that the company committed no wrong in soliciting this business under the circumstances. Other points are urged by appellants respecting alleged errors in the court's charge and rulings which have been considered and found without merit.

The judgment will be affirmed, with costs.