**L. F. DOMMERICH & CO., Inc., a New York corporation, Plaintiff,**

v.

**Samuel BRESS, Evelyn Bress, Harry Matlin and Edward G. Rubinoff, Defendants.**

Civ. A. No. 612–67.

United States District Court
D. New Jersey.

Feb. 9, 1968.

**591**

Bilder, Bilder, Silver & McCurley, by Walter J. Bilder, Newark, N. J., for plaintiff.

Shapiro, Brotman, Eisenstat & Capizola, Vineland, N. J., by Samuel L. Shapiro and Gerald M. Eisenstat, Vineland, N. J., on the brief, for defendants.

## OPINION

COHEN, District Judge:

This is an action in trover and conversion, alleging damages in excess of $100,000.00, based upon diversity of citizenship and requisite jurisdictional amount, arising out of a New Jersey chattel mortgage transaction. Defendants, Samuel Bress, Evelyn Bress, Harry Matlin and Edward G. Rubinoff move to strike the complaint contending that it fails to state a claim upon which relief can be granted. Plaintiff, L. F. Dommerich, Inc., a New York corporation (Dommerich), cross moves for a restraint of an action filed against it in

the Superior Court of New Jersey by these same defendants which seeks to compel its foreclosure of the chattel mortgage in question. The pending State Court proceeding was instituted subsequent to the action in this Court. In support of their motion to dismiss the complaint, defendants argue that the plaintiff's present action of trover and conversion should have been asserted as a counterclaim in a prior State Court declaratory judgment action brought by these defendants involving the same chattel mortgage and in which Dommerich intervened as a defendant. Dommerich contends on its motion for a stay, that the pending State Court action seeking to compel it to foreclose its chattel mortgage lien there should be raised in this Court as a compulsory counterclaim at the time answer is filed, arising as it does out of the same chattel mortgage transaction, and not be asserted in the State Court where it might defeat or interfere with the jurisdiction, order or judgment of this Court.

Controversy between these parties has been protracted, complicated and bitter. Six distinct actions have involved them in either the New Jersey State Courts or this Court.[1] These various proceedings are interwoven and require narrative history to set a proper perspective within which to frame a determination of the present cross motions.

In considering the present cross motions, an examination somewhat in depth, but without prejudgment, was made of the instant complaint, which incorporates the declaratory judgment proceedings of the State Court, the present motions, the numerous movants' reply and supplemental briefs, and the oral arguments of counsel. Briefly, the defendants under various business identities, engaged in poultry feed mill operations and the processing of animal feed products in Vineland, New Jersey. Some twelve companies[2] comprised what we shall refer to as the "Rubinoff complex," whose capital stock was owned or controlled by the Rubinoff Associates, a partnership, of which the defendants herein were co-partners at the times pertinent. On March 4, 1960, the Rubinoff enterprises were restructured, so that all the capital stock of their corporations was transferred to a Pennsylvania corporation, Son-Mark Industries, Inc. of Philadelphia. One of the latter's subsidiary corporations, Gold-Mark Realty Company, Inc., a New Jersey corporation, was created to receive title to certain real estate premises situated at North Sixth Street and Park Avenue, Vineland, New Jersey, where the milling and processing of feed products were conducted. On March 4, 1960, as part of this transaction, Gold-Mark executed a realty mortgage in the amount of $1,300,000.00 to Rubinoff Associates. Son-Mark and Rubinoff As-

1. a) A chattel mortgage foreclosure action filed September 12, 1961 in the New Jersey Superior Court, Docket F–96–61, by L. F. Dommerich & Co., Inc. v. Jacob Rubinoff Co.

b) A voluntary petition in bankruptcy filed July, 1964 in this District by Jacob Rubinoff Co., Docket No. 396–64.

c) A declaratory judgment action filed January 7, 1965 in the New Jersey Superior Court, Docket L–11165–64, by the defendants here, in which Dommerich counterclaimed.

d) An action for money damages filed July 30, 1965 in the New Jersey Superior Court by Dommerich v. Edward G. Rubinoff, one of the defendants here. (Docket number not supplied.)

e) The instant action here for trover and conversion filed June 6, 1967.

f) An action to compel Dommerich to foreclose the chattel mortgage in question filed June 13, 1967 in the New Jersey Superior Court, Docket C–2635–66, by the defendants here.

2. The Rubinoff poultry feed mill operations included the following companies: Rubinoff Grain and Feed Company; Rubinoff Milling Company; Rubinoff Transportation Company; Rubinoff Feed Company of Vineland; Rubinoff Feed Company of Clayton; Rubinoff Feed Company of Woodbury; Rubinoff Feed Company of Egg Harbor; Delsea Central Company; Jacob Rubinoff Company; Son-Mark Industries, Inc.; Gold-Mark Realty Company, Inc., and Jacob Rubinoff Employees Association.

sociates had officers and owners in common and in addition to creating Gold-Mark they formed the Jacob Rubinoff Co., as the management corporation of all their assets and operations. It was this latter corporation which, on June 3, 1960, executed the chattel mortgage in question. Thereafter, sometime prior to January 13, 1962, Son-Mark was involved in a Corporate Reorganization Proceeding under *Chapter X* of the *Bankruptcy Act* in the Eastern District of Pennsylvania. And the Jacob Rubinoff Co. was adjudicated a bankrupt in this District in 1964.

In light of the plaintiff's complaint, that a conversion of the chattels resulted from the adverse claims and hostile title and interests asserted by the defendants in prior litigation between these parties, the foregoing brief history will be expanded by a closer examination of the several pieces of litigation, to ascertain whether there is set forth a valid and sufficient cause of action in common law trover and conversion and, if so, whether the defendants should be restrained in their State Court action, which seeks to compel the plaintiff to foreclose the chattel mortgage, until an ultimate determination on the merits is reached in this Court.

## I.

### NEW JERSEY CHATTEL MORTGAGE FORECLOSURE SUIT

On June 3, 1960, within three months of the aforesaid realignment of the Rubinoff companies, the Jacob Rubinoff Co., of which defendant Edward G. Rubinoff was the president, created a chattel mortgage to plaintiff Dommerich as security for a $243,000.00 debt representing a prior loan of $43,000.00 and a new loan of $200,000.00, upon milling machinery and equipment situated at the

realty held by Gold-Mark, in Vineland, New Jersey. In 1961, the Gold-Mark realty mortgage fell into default. Rubinoff Associates instituted foreclosure proceedings and obtained a sheriff's deed at the sale on October 3, 1961. Around the same time, the Jacob Rubinoff Co. chattel mortgage fell into default, and Dommerich started its foreclosure proceeding wherein Rubinoff Associates intervened, claiming ownership of the chattels in suit by reason of the foreclosed realty mortgage, which purported to cover the same milling machinery and equipment allegedly affixed to the realty conveyed to them by sheriff's deed. On April 24, 1962, during the pendency of the chattel mortgage foreclosure action, an extension agreement was entered into between Dommerich and Jacob Rubinoff Co., and the foreclosure proceeding was dismissed by consent and without prejudice. It was agreed that the debt was then $174,104.77.

As further evidence of the security of the extended chattel mortgage transaction between them, Jacob Rubinoff Co. executed and recorded on April 23, 1963 a financing statement, pursuant to the *Uniform Commercial Code*,[3] to Dommerich covering "equipment and general intangibles presently owned by the debtor and subsequently acquired by the debtor * * *," at the premises in question as well as elsewhere. It recited further that, " * * * said lands and premises are owned by Edward Rubinoff, Harry Matlin and Samuel Bress, partners doing business as Rubinoff Associates," being three of the present four defendants.[4]

## II.

### JACOB RUBINOFF CO. BANKRUPTCY PROCEEDING

In July, 1964, Jacob Rubinoff Co. filed a voluntary petition in bankruptcy in

---

3. The Uniform Commercial Code became effective in New Jersey on January 1, 1963, 12A:10–106, N.J.S.A.

4. Coincidentally, on June 10, 1963, a similar financing statement was filed showing Jacob Rubinoff Co., as the debtor, A.J.

Armstrong Co., Inc., a New York corporation, as the creditor, and Rubinoff Associates as the owner of the lands and premises upon which the machinery and equipment in question were located (again listing Edward Rubinoff, Harry Matlin and Samuel Bress). See p. 594, infra.

this District, in which proceeding Rubinoff Associates asserted ownership to the chattels in question and applied for an order directing Dommerich to show cause why it should not be determined who, in fact, was the owner of the machinery and equipment referred to in the chattel mortgage of June 3, 1960. The Referee in Bankruptcy concluded that he lacked jurisdiction to make such a determination and dismissed the application.

III.

### NEW JERSEY DECLARATORY JUDGMENT ACTION

On January 7, 1965, Rubinoff Associates instituted a declaratory judgment action in the Superior Court of New Jersey, naming Dommerich as one of the defendants, seeking to establish the rights of the parties in and to all of the equipment mentioned in the challenged chattel mortgage. In their complaint, they alleged that as owners of the premises in question, they had executed a lease to Jacob Rubinoff Co., which included the machinery and equipment contained in the buildings thereon, and which lease had expired thereafter on or about April 24, 1964, whereupon the lands, buildings and contents thereof were returned to them. The complaint stated further that Dommerich was made a defendant because it might assert some claim to the machinery and equipment in question by reason of its chattel mortgage, when, in fact, Rubinoff Associates owned such machinery and equipment.

Dommerich filed an answer April 15, 1965, denying Rubinoff Associates' claim of title to the equipment and set up a counterclaim stating substantially:

> When the chattel mortgage of June 3, 1960 was made by Jacob Rubinoff Co. to Dommerich, Edward G. Rubinoff, President of the corporation, was also a member of Rubinoff Associates at the same time and knew that Ja-

cob Rubinoff Co. did not have title to the machinery and equipment purported to be covered by the chattel mortgage, and knew that title in fact was in Rubinoff Milling Company, one of the predecessors of the Jacob Rubinoff Co., and that Rubinoff Associates also knew this fact. It is contended, therefore, that Rubinoff Associates were not entitled to assert title, and were estopped from contesting the right of Dommerich to claim a lien upon said machinery and equipment by virtue of its chattel mortgage.

On September 27, 1965, the defendants filed an answer to the above Dommerich counterclaim, admitting that prior to March, 1960, the Rubinoff Associates had stock ownership control of the various Rubinoff corporations, including Rubinoff Milling Company, and contended that Rubinoff Milling Company had title to the milling property as well as the chattels affixed thereon.[5] However, they denied any knowledge of the loan transaction and chattel mortgage of June 3, 1960 and claimed that any lien or claim of Dommerich, as a counterclaimant, was subject and subordinate to their interests as Rubinoff Associates.

On March 1, 1966, Rubinoff Associates filed an amended complaint in the aforesaid declaratory judgment action adding Rubinoff Milling Co., a New Jersey corporation, as a party defendant alleging that it might claim some interest in the machinery and equipment in question. On March 4, 1966, Dommerich filed an answer to the amended complaint, but did not refer to its original counterclaim. It did, however, state a belief that A. J. Armstrong Co., Inc. had become the owner of all the capital stock of Rubinoff Milling Co., and hence, Rubinoff Associates did not and could not assert any right, title or interest in the machinery and equipment in question. (See marginal reference 4, ante.) This arose, it stated, by virtue of the *Chapter*

---

5. There seems to be some confusion as to whether Rubinoff Milling Company or Rubinoff Feed Company of Vineland own-

ed the real estate in question. In any event, Rubinoff Associates owned both corporations.

X proceeding resulting in a transfer on January 25, 1962 by the Trustee of all the right, title and interest of the debtor, Son-Mark Industries, Inc., to the Jacob Rubinoff Employees Association,[6] which transfer included all the capital stock of Jacob Rubinoff Co. and its affiliated corporations, of which Rubinoff Milling Co. was one. It stated, further, that on the same day, after the aforesaid transfer by the trustee to the Jacob Rubinoff Employees Association, the association sold and assigned all the capital shares of Rubinoff Milling Co. to A. J. Armstrong Co., Inc.

The declaratory judgment action was tried on June 9, 1966, and although Dommerich did not participate therein, some question was raised by the trial court as to whether Dommerich was abandoning its counterclaim. However, the Court, after taking testimony, determined that since Jacob Rubinoff Co. was the owner of all the outstanding stock of Rubinoff Milling Company, as well as of other Rubinoff corporations constituting the Rubinoff complex, it was in effect the owner of the machinery and equipment set forth in the chattel mortgage, at the time of its execution to Dommerich. Consequently, in its judgment, the State Court determined that the Dommerich chattel mortgage constituted a valid first lien upon the machinery and equipment listed therein. It found further, that Samuel Bress, Evelyn Bress, Harry Matlin, Amelia Matlin and Edward G. Rubinoff, partners trading as Rubinoff Associates (Amelia is not a party here) had no right, title or interest in the feed machinery and equipment in question. Thus, the validity of the mortgage was judicially established between the parties to that action by a court of competent jurisdiction. Contrary to the contention of Rubinoff Associates, that Dommerich's failure to restate its counterclaim in its amended answer to the amended complaint and its failure to partcipate at

trial effected an abandonment of its claim, no such abandonment was divined by the trial court. Its judgment was affirmed on appeal. Bress v. L. F. Dommerich & Co., Inc., 94 N.J.Super. 282, 286, 228 A.2d 82 (App.Div., March 17, 1967).

IV.

NEW JERSEY SUPERIOR COURT DAMAGE ACTION

After issue had been joined on the amended pleadings in the declaratory judgment action, set forth in III herein, Dommerich commenced a separate action on July 30, 1965 in the New Jersey Superior Court against Edward G. Rubinoff, individually, alleging that he was not only an active partner in Rubinoff Associates, but also, as the president of Jacob Rubinoff Co., participated in the chattel mortgage loan transaction and knowingly misled Dommerich into relying upon his misrepresentations that his company, the mortgagor, did in fact own the chattels purportedly covered by the chattel mortgage; that in addition, he secured a loss payable endorsement on existing insurance policies for Dommerich's interest as a chattel mortgagee. Dommerich alleged further, that despite this conduct, consistent with the mortgagor's ownership, Rubinoff repudiated those same interests of Dommerich, as the mortgagee, as well as those of Jacob Rubinoff Co., as the mortgagor, when he and his partners, Rubinoff Associates, adversely claimed ownership of and superior possessory rights to the mortgaged chattels, which were hostile to Dommerich in the chattel mortgage foreclosure, also in the Jacob Rubinoff Co. bankruptcy, as well as in the declaratory judgment action initiated by himself and his partners, resulting in damages to Dommerich, in the sum of $200,000.00. The present record does not reflect, nor do the numerous briefs of counsel indicate, any final disposition of this damage action.

6. The present record does not otherwise indicate who comprised the Jacob Rubinoff Employees Association.

## V.

### FEDERAL COURT DIVERSITY ACTION FOR DAMAGES BASED UPON AN ALLEGED TROVER AND CONVERSION AS AT COMMON LAW

The present complaint was filed here June 6, 1967. Cross motions were made prior to answer. In its complaint, Dommerich maintains that by the defendants' constant claim of title to the chattels, they asserted an interest in and ownership of the chattels in question so wholly adverse and absolutely hostile to the interest of Dommerich, as to effect a trover and conversion in fact and law, thereby subjecting them to a suit for damages in an amount equivalent to the value of the chattels, as of the time such alleged conversion occurred. In meeting this proposition, defendants insist that they never asserted any possessory interest in the chattels in question, nor did they in fact exercise any dominion over them, which was hostile to the interest of the chattel mortgagee but, rather, that the chattels were annexed to and formed part of the realty to which they held title, by virtue of the Sheriff's deed of October 3, 1961, ante. Additionally, defendants urge that the plaintiff does not have such an interest in the chattels as can support an action of trover and conversion, contending that any tortious act by the assertion of an interest hostile to plaintiff in the chattel foreclosure was repudiated by the 1962 extension agreement and the filing of a financing statement on April 23, 1963. Defendants argue that any subsequent conduct alleged as a conversion in either the bankruptcy proceedings or by filing the declaratory judgment action, should have been pleaded by Dommerich in the latter action as a counterclaim. They maintain, that as a matter of law, the mere filing of legal pleadings to protect or ascertain their legal interests does not constitute a tortious conversion.

## VI.

### NEW JERSEY STATE COURT ACTION TO COMPEL FORECLOSURE OF CHATTEL MORTGAGE

That action was filed on June 13, 1967, one week after the federal action, by the defendants demanding that plaintiff here foreclose its mortgage there, in order to unburden their lands and buildings of the onus imposed by the presence of machinery and equipment judicially determined not to belong to them. It is that action which the plaintiff cross moves to stay.

#### DISCUSSION AND RULING

Succinctly stated, defendants' motion to dismiss the complaint challenges the right of the plaintiff to maintain its action, contending that it at no time had either such title or possessory right to the machinery and equipment described in the chattel mortgage upon which to predicate a trover and conversion action.

The declaratory judgment established that Jacob Rubinoff Co. was the owner-debtor of the mortgaged chattels in June 1960, when the mortgage was executed, as well as in 1961 during the foreclosure. The Court found further, that the officers of Jacob Rubinoff Co., common also to the other Rubinoff companies, knew that it acted as the parent and management company in treating the assets of all the companies as its own and that with such knowledge, these common officers provided the necessary corporate instruments, warranties and assurances of freedom from liens in the chattel mortgage transaction. The Court concluded that Jacob Rubinoff Co. was the owner-mortgagor and Dommerich was mortgagee-first lienor of the chattels and that the present defendants (and Amelia Matlin, also, as a party to that action) had no right, title or interest in the same.

Essentially, when the maze of litigious entanglements is unravelled and the mystique of corporate facades is penetrated, Dommerich alleges that it will be discovered that it is a creditor of a quarter of a million dollar loan made to the

defendants acting through one of their many corporate and partnership masks. The date of March 4, 1960, saw the regeneration of the extensive Rubinoff feed milling enterprises through the creation of new corporations to serve their many interests; the manipulation of stockholdings of the various corporations; the redistribution of assets, including the machinery and equipment in question; and the creation of new obligations by some of these legal entities, including the chattel mortgage transaction in question. However, it is apparent that ultimate control and ownership of these various companies, corporate and otherwise, were vested in the same individuals, namely, the defendants herein. And while Son-Mark Industries, Inc. obtained all the capital stock of the many Rubinoff corporations owned by Rubinoff Associates through officers common to both, the defendants herein, it in turn transferred all its corporate stock holdings to Jacob Rubinoff Co., the management company. The real estate mortgagor, Gold-Mark Realty Co., Inc., was controlled by the defendants herein, trading as Rubinoff Associates, who claimed title to the realty and the chattels on the institutional annexation theory, through foreclosure in 1961 of the $1,300,000.00 realty mortgage loan of which the Rubinoff Associates were the mortgagees.

■ The issues raised by the present cross motions must be viewed within these carefully structured corporate webs in which the parties now find themselves. In New Jersey, whose laws govern this diversity matter, the common law mortgage, whether chattel or real, vested the mortgagee with a defeasible title to the security with the concomitant right of immediate possession, subject to defeat upon the timely payment of the mortgage loan by the mortgagor.[7] Such an estate with its incidents was modified in New Jersey in the Nineteenth Century, so as to convert the common law transaction into one for security only, rather than the creation of a common law estate. Sanderson v. Price, 21 N.J.L. 637 (E. & A.1846); Woodside v. Adams, 40 N.J.L. 417 (Sup.Ct.1878); Kirkeby Corp. v. Cross Bridge Towers, Inc., 91 N.J. Super. 126, 131, 219 A.2d 343 (Ch.Div. 1966); Farrow v. Ocean County Trust Co., 121 N.J.L. 344, 2 A.2d 352 (Sup.Ct. 1938). Thereafter, the mortgagor's right to possession, as an incident of his title, remained in him, rather than moving to the mortgagee, and such right was paramount to all the world, unless and until a default in the mortgage terms occurred upon which the mortgagee proceeded by foreclosure to vacate the mortgagor's rights, including that of possession, and the extinction of his equity of redemption by final judgment.[8]

The present complaint alleges that these very defendants independently intervened in Dommerich's prior chattel mortgage foreclosure proceeding and affirmatively asserted rights, title, interests and lawful possession exclusively in themselves and, at the same time, adverse and hostile to both the mortgagor and mortgagee; that the defendants made similar claims which were adverse and hostile to the mortgagee in the mortgagor's bankruptcy proceeding, as well as in their own declaratory judgment action, all of which pleadings are annexed as exhibits and incorporated by reference into the complaint. Thus, it is charged that these defendants asserted interests adverse and hostile to Dommerich on at least three separate occasions by more than the mere perfunctory

---

7. Campbell v. Roddy, 44 N.J.Eq. 244, 14 A. 279, 280 (E. & A. 1888).

8. Under the Uniform Commercial Code, which is the present law in New Jersey for commercial security transactions, unless otherwise agreed between the parties, upon default a secured party has the right to take immediate possession of the collateral without judicial process if it can be done without a breach of peace. 12A:9–503, N.J.S.A. Furthermore, the repository of legal title in security transactions is of no consequence under the Code in the establishment of rights, duties and the pursuit of remedies, 12A:9–202, N.J.S.A., and the Code takes no position regarding the location of title. 15 Am.Jur.2d § 116, p. 291.

filing of a legal answer in a pending action. And it is argued, that these defendants persistently sought to divert the chattel security from the reach of the mortgagee, and asserted interests inimical to the mortgagee's which would in effect leave the plaintiff with a balance due in excess of $100,000.00 on a dry, unsecured original loan of a quarter million dollars.

██ The present complaint in "trover" is the common law form of action to recover the value of goods or chattels by reason of an alleged unlawful interference with the possessory right of another, by the assertion or exercise of possession or dominion over the chattels, which is adverse and hostile to the rightful possessor. Mfgrs. Cas. Ins. Co. v. Mink, 129 N.J.L. 575, 30 A.2d 510 (Sup. Ct.1943); Mueller v. Tech. Devices Corp., 8 N.J. 201, 84 A.2d 620 (1951). And while the wrong and the remedy are ancient creatures of the common law, the gist of the modern action of trover is "conversion," that is, the exercise of any act of dominion over chattels in denial or defiance of or adverse to another's title or possessory right. *Mueller*, supra.

██ Viewed against the foregoing definitions, the plaintiff's complaint, and the allegation of facts and circumstances contained therein, states a valid and sufficient cause of action in law. Consequently, defendants' motion to dismiss the complaint, for failure to state a claim upon which relief can be granted, will be denied.

Turning to the plaintiff's cross motion to restrain the defendants' subsequent State Court action, which seeks to compel the instant plaintiff to foreclose the chattel mortgage in question, a less complex but no less troublesome problem is presented. The questions are whether these separate actions between the same parties may co-exist, or whether, as contended by the plaintiff in this Court, the gravamen of the State Court proceeding should be interposed here as a compulsory counterclaim when the instant defendants file answer to the complaint; or whether as countered by them, the present claim of trover and conversion should have been asserted by the instant plaintiff as a counterclaim in the prior declaratory judgment proceeding in which it was a defendant-counterclaimant on the question of title.

First of all, New Jersey practice provides for a *permissive* counterclaim. R.R. 4:13–1 states:

"A pleading *may* state as a counterclaim any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim, except that any defendant failing to set off a liquidated debt or demand, or a debt or demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such debt or demand which might have been set off under the provisions of this rule." (Emphasis supplied.)

██ The declaratory judgment action sought to, and did establish the legal status of the parties to that proceeding. It was not an action for damages in which a connected or unconnected debt could have been offset under the foregoing rule, nor is it likely that it could have been successfully pleaded in that type of suit. Cf: Rosa v. Transport Operators Co., 45 N.J.Super. 438, 443, 444, 133 A.2d 24 (App.Div.1957). In a trover action, as here, the conversion must be established before the value of the chattels can be ascertained by traditional proofs fixing the extent of damages. Even assuming that Dommerich could have pleaded a "trover and conversion" in the declaratory judgment action in equity, such would have been merely a *permissive* counterclaim, an action at law, which it elected not to pursue until its status had been established upon which to base such a claim. Therefore, defendants' contention in this regard must fall.

Plaintiff raises a "tit for tat" argument to the effect that defendants' instant State Court action seeking to com-

pel foreclosure is a matter of *compulsory* counterclaim under Rule 13(a) F.R.Civ. P., which provides as follows:

"A pleading *shall* state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action * * *." (Emphasis supplied.)

The foregoing rule is considered by the Federal Courts to be a "good housekeeping" rule, being procedural, avoiding a multiplicity of actions, where all claims between the opposing parties generally have a logical connection arising out of the same transaction or occurrence. Southern Const. Co. v. U. S. etc., 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); Stewart-Warner Corp. v. Westinghouse Elec. Corp., 325 F.2d 822 (2 Cir. 1963), cert. den. 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964); Barron & Holtzoff, Fed. Pract. & Proced. 1A §§ 391, 392. Plaintiff invokes 28 U.S.C. § 2283, contending that a stay of the State Court action should issue, where the effect of a state court judgment might tend to defeat or impair the jurisdiction, judgment, or orders of the Federal Court.

The general prohibition against enjoining actions in state courts is contained in 28 U.S.C. § 2283:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Here, as in Reines Distributors, Inc. v. Admiral Corporation, 182 F.Supp. 226 (S.D.N.Y.1960), the adverse parties collaterally seek strictly *in personam* judg-

ments in courts of concurrent jurisdiction. In determining whether an injunction should issue, we consider it unnecessary to reach the issue of compulsory or permissive counterclaims. Parenthetically, the present motions abated the time for filing an answer, which answer might very well have coupled with it a counterclaim. We do determine that where both federal and state courts have concurrent jurisdiction of adverse parties seeking *in personam* judgments, then each may generally proceed with its separate litigation until judgment is rendered in one court which may be interposed affirmatively as *res judicata* in the other. Javelin Oil Company v. T. C. Morrow-Drilling Company, 266 F.Supp. 119 (W.D.La. 1967); Stevens v. Frick, 372 F.2d 378 (2 Cir. 1967); Reines, supra.; Penn General Cas. Co. v. Comm. of Penna., 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922). As stated by the Supreme Court in *Kline*, at page 230, 43 S.Ct. at page 81:

"* * * a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court."

Clearly, the litigation in this Court is *in personam* in that it seeks a money judgment of damages against the named defendants, personally, for an alleged tort of conversion. Likewise, the action pending in the State Court is *in personam*, in that it seeks to impose in equity an affirmative personal obligation upon Dommerich, to forego its choice or election of available remedy here, and to compel it to foreclose the chattel mortgage there. It should be noted, that the action in the State Court is not one in

foreclosure by a mortgagee, in which event it could be partly *in personam* based upon a personal obligation, such as a note or bond, and also partly *in rem* based upon a forced sale of the chattels.[9] Moreover, the statutory prohibition of Section 2283 against United States courts enjoining State court proceedings establishes more than a rule of comity or judicial discretion; it circumscribes the statutory judicial power of the United States courts, *Stevens,* supra; Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co., 328 F.2d 791, 793 (3 Cir. 1964). Congress made it clear that the prohibition of the statute is not to be whittled away by judicial improvisation for some supposed convenience. Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 514, 75 S.Ct. 452, 99 L.Ed. 600 (1955). And while it may seem that the more convenient and better "housekeeping" choice is to entertain in this Court both of these related actions between the same parties, since it was here that the first of these presently pending actions was instituted, nevertheless, convenience alone cannot be made the sole basis for a stay. *Reines,* supra, 182 F. Supp. at p. 231. Under the foregoing authorities, the Court has no such judicial discretion.

In conclusion, the language of the Court in *Reines,* supra, at page 230, seems particularly appropriate in this case:

"In addition to the views set forth in the Red Top and Fantecchi cases, I would consider Rule 13(a) as simply a federal housekeeping rule to expedite the courts' business. As such it could not possibly qualify as an exception within the intendment of Section 2283. In light of Congressional particularization in Section 2283 and the failure in Rule 13(a) to provide for a stay of a subsequent state court action as is provided, for example, in the removal statute, 28 U.S.C. § 1446(e), this conclusion seems clear. It is confirmed by the policy enunciated in the opinions in the Toucey (Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S. Ct. 139, 86 L.Ed. 100 [1941]) and Amalgamated (Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 [1955]) cases discussed above. Comparing the policy of federal court noninterference with state court proceedings dating back to the Act of 1793 with the comparatively recent enactment of Rule 13(a), it can be assumed that the framers of the rules realized the balance that the federal courts would strike in the absence of an express contrary intention stated in either Section 2283 or Rule 13(a). *The state courts are free to recognize the federal policy and grant a stay on the basis of comity. But in the absence of a Congressional mandate, the federal courts are not free to enforce the policy on them.*" (Emphasis supplied.)

*Accord:* Red Top Trucking Corp. v. Seaboard Freight Lines, Inc., 35 F.Supp. 740 (S.D.N.Y.1940); 3 Moore's Fed. Pract. para. 13.12. Cf. Brown v. Pacific Mut. Life Ins. Co., 62 F.2d 711 (4

---

9. Under the New Jersey Chattel Mortgage Act, R.S. 46:28-1 et seq., N.J.S.A., as amended, effective at the time of the chattel mortgage transaction in question, unlike other states, no provision was made for foreclosure procedures, except where the chattels were household goods, R.S. 46:28-13, N.J.S.A. Veterans Loan Auth. v. Wilk, 61 N.J.Super. 65, 160 A.2d 138 (App.Div.1960). The Uniform Commercial Code, supra n. 7, effective January 1, 1963, repealed certain sections, but preserved certain contracts validly made before the effective date, as well as the rights, duties and interests flowing therefrom. 12A:10–106, N.J.S.A. Under the Code, the defaulted chattel mortgagee is entitled to take immediate peaceful possession of the chattels and sell them at private, public or judicial sale. However, the pending state court action is not a proceeding by a mortgagee, nor is it a proceeding against the *res.* To the contrary, it was instituted by the defendants here who, strictly speaking, are not even parties to the chattel mortgage instrument, and it seeks a decree compelling Dommerich to foreclose its mortgage and to remove the chattels from the premises of the defendants.

Cir. 1933), relied upon by plaintiff for a stay but where, unlike the present matter, the stay issued out of a federal equity proceeding for inadequacy of legal remedy in a state court.

Therefore, it is the opinion of this Court that both the defendants' motion to dismiss the complaint and the plaintiff's motion to enjoin the defendants' action pending in the State Court should be denied.

Counsel for the plaintiff shall submit an appropriate order.