**NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff–Appellee,**

v.

**STATE OF FLORIDA, Defendant,**

**John Tanner, State Attorney in and for the Seventh Judicial Circuit of Florida, Defendant–Appellant.**

No. 90–3106.

United States Court of Appeals, Eleventh Circuit.

April 11, 1991.

---

Dennis K. Bayer, Asst. State Atty., Daytona Beach, Fla., Arthur C. Wallberg, Asst. Atty. Gen., Tallahassee, Fla., for defendant-appellant.

Robert E. Warren, Taylor, Moseley & Joyner, Jacksonville, Fla., Jeffrey Hunter Moon, Michael T. Kerrine, Washington, D.C., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, FAY, Circuit Judge, and HOFFMAN *, Senior District Judge.

TJOFLAT, Chief Judge:

This is an appeal from a district court's order enjoining a state criminal prosecution. The controversy began when appellant John Tanner, a Florida State Attorney, filed a criminal information against the appellee, National Railroad Passenger Corporation (Amtrak), in state court, charging it with various acts of commercial littering. Before the trial on the information could begin, Amtrak brought the present suit in the district court, seeking a declaration that federal law preempted Florida's commercial littering law, as applied to it, and an order enjoining Tanner and the State of Florida from proceeding with the criminal prosecution. Amtrak also sought an order enjoining the State of Florida from any further enforcement against it of the commercial littering laws. The criminal prosecution against Amtrak continued, however,

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

and a jury found it guilty as charged. Prior to the imposition of sentence, Amtrak returned to the district court, in the present case, and moved the court to enjoin the state court from imposing sentence or taking any other action in the case; the district court granted the requested injunctive relief. We vacate the district court's order and remand the case for further consideration.

## I.

The facts giving rise to this appeal are relatively simple. Amtrak, a corporation created by the Rail Passenger Service Act, 45 U.S.C. §§ 501–658 (1988), operates intercity railroad passenger trains throughout the United States. Six Amtrak trains pass daily through Putnam County, Florida, crossing two bridges that span waterways, Rice Creek and the St. Johns River. Amtrak's trains dispose of human waste along its right-of-way.

On July 27, 1989, John Tanner, State Attorney for the Seventh Judicial Circuit of Florida, which includes Putnam County, filed a three-count felony information against Amtrak; the information charged that Amtrak, on certain specified dates, had discharged human waste into Florida waters, in violation of Fla.Stat. § 403.413(4)(b), (5)(c) (1989 & Supp.1990). On September 15, 1989, Tanner filed a second information charging Amtrak with another incident of criminal commercial littering by discharging human waste into Florida waters.[1] Amtrak was arraigned on September 18, 1990 and entered a plea of not guilty.

The next day, Amtrak filed the complaint in the case before us, naming Tanner and the State of Florida as defendants, contending that the Florida laws it allegedly had violated were preempted by federal statutes and regulations, and arguing, further,

that these state laws placed an undue burden on interstate commerce. Amtrak sought both a declaratory judgment, holding that the state laws were preempted by federal law and contravened the commerce clause, and preliminary and permanent injunctive relief, prohibiting Tanner and the State from enforcing these state laws against it.[2]

On September 29, 1989, Amtrak moved the state court to dismiss the criminal charges on the ground of federal preemption; this motion was subsequently denied. On October 13, 1989, Tanner moved the district court to dismiss Amtrak's action; this motion was also denied. On November 9, 1989, Amtrak moved the district court to enjoin the state court from proceeding with the criminal prosecution against it. The district court, following a hearing on November 17, 1989, denied this motion; it reserved, however, the right to revisit the issue at a later date.

The trial of the state court matter began on November 27, 1989. The jury found Amtrak guilty of four counts of commercial littering;[3] sentencing was set for January 19, 1990. Meanwhile, on January 11, 1990, the district court held a status conference in the federal action. At this conference, the court stated that it would entertain a renewed motion by Amtrak to enjoin the state court prosecution if the state court would not agree to defer sentencing and the entry of judgment until the resolution of the federal action. Amtrak promptly moved the state court to stay the sentencing proceeding; when the court denied its motion, Amtrak returned to the district court and, on January 17, 1990, that court issued a preliminary injunction, enjoining the state court and Tanner from proceeding with the state criminal prosecution of Amtrak and, specifically, the sentencing hearing. The district court issued this order, it

1. This second information also charged Amtrak with creating a public nuisance, Fla.Stat. § 386.041(1)(f) (1989). This charge was based on the discharge of human waste from an Amtrak train onto individuals fishing beneath a bridge.

2. The district court subsequently dismissed the State of Florida from the case. The dismissal is not an issue here.

3. Prior to trial, the State's public nuisance charge against Amtrak, *see supra* note 1, was remanded to county court; its status is unknown to us at this time.

said, to preserve its jurisdiction to act in Amtrak's federal action and to protect its ability to effectuate any judgment it might enter in that case.

Tanner now appeals the district court's order.[4] He argues that the Anti–Injunction Act (the Act), 28 U.S.C. § 2283 (1988), prohibited the issuance of an injunction in this case. Specifically, he claims that the Act provided no exception for cases involving claims of federal preemption. Therefore, the district court abused its discretion in issuing the injunction.[5]

■ Amtrak responds that the injunction in this case was necessary to aid the court in the exercise of its jurisdiction, and thus fell within an exception to the Anti–Injunction Act's strict prohibition against federal court enjoinment of state proceedings.[6] Amtrak points out that the district court has jurisdiction over Amtrak's pending federal action, and that if the state court had sentenced Amtrak and entered judgment against it, the federal action would have

been meaningless—the district court would have been unable to enjoin the prosecution of an already completed state action and its declaratory judgment would have been ineffective. Thus, unlike cases in which a federal court, without jurisdiction over a related case, enjoins an ongoing state proceeding in violation of the Anti–Injunction Act, this case involved a proper exercise of discretion by the district court to protect and preserve its jurisdiction over a case affecting essentially federal interests.[7]

■ We agree with Tanner. The Anti–Injunction Act is an absolute prohibition against federal court enjoinment of state court proceedings, unless the injunction falls within one of the specifically defined exceptions. The law is clear that a claim of federal preemption does not constitute an exception to this absolute prohibition. This is so regardless of both the merits of the federal preemption claim and the validity of the federal or state courts' asserted jurisdiction over the controversy.

4. The state court enjoined by the district court's order has not appealed. Perhaps the court did not appeal because the district court could not enforce the injunction, through the exercise of its civil contempt power, against *that court.* Rather, the district court could enforce the injunction only if it made the judge presiding over the state prosecution a party to the case and then enjoined him.

5. Alternatively, Tanner contends that if the Anti–Injunction Act did not prohibit the district court from issuing the injunction in this case, the court erred in finding that the elements necessary to justify an injunction had been met. Specifically, Tanner maintains that Amtrak was not substantially likely to succeed on the merits in its federal action. He argues that the district court, pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), would be required to abstain from enjoining the ongoing state criminal proceeding or rendering a declaratory judgment that would interfere with that proceeding. Therefore, Amtrak would not have succeeded on the merits below, and the district court abused its discretion in issuing the preliminary injunction. Given our disposition of this case, we do not address the validity of this argument. For a brief discussion of this argument in a different context, see *infra* note 12.

6. Amtrak initially contends that Tanner waived his Anti–Injunction Act argument by not raising it below. In his reply to Amtrak's motion for a preliminary injunction, however, Tanner specif-

ically incorporated the arguments he made in his motion to dismiss the federal action, which included the argument that the Anti–Injunction Act forbade the district court from enjoining the state court proceeding. Thus, Tanner did not waive this argument, and it is properly before us.

7. Additionally, Amtrak argues that, as a federally-chartered corporation whose stock is owned by the federal government, its position in this case is analogous to that of a federal agency seeking to enforce preemptive regulations without state interference. Federal courts, accordingly to Amtrak, have recognized that the Anti–Injunction Act does not prevent suits by the federal government or its agencies to protect superior federal interests. Thus, the district court properly issued the injunction in this case to protect Amtrak's peculiarly federal interests.

Even if we accepted Amtrak's characterization of the law with respect to federal agencies and the Anti–Injunction Act, it is clear that this principle does not apply to Amtrak. The Rail Passenger Service Act specifically states that Amtrak "will not be an agency, instrumentality, authority, or entity, or establishment of the United States Government." 45 U.S.C. § 541. Instead, Amtrak is simply a "for profit corporation," *id.;* as such, it, without an explicit congressional directive to the contrary, is entitled to no greater protection than other for-profit actors. Amtrak's argument on this issue is meritless.

Accordingly, the district court's order enjoining the state court proceeding is invalid to the extent that it relies on federal preemption as an exception to the Anti–Injunction Act. We remand this case, however, to the district court for consideration of the effect recent amendments to the Rail Passenger Service Act may have on the propriety of the issuance of the injunction Amtrak seeks; these amendments appear expressly to authorize such an injunction.

## II.

The Anti–Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This statute, with a lineage that postdates the ratification of the Bill of Rights by a mere two years,[8] is designed "to prevent needless friction between state and federal courts." *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 537 (1940). To preserve the delicate lines of demarcation between the state and federal systems set out in the Anti–Injunction Act, the Supreme Court has strictly abided by the Act's language. As the Court stated in *Amalgamated Clothing Workers of America v. Richman Bros.*, 348 U.S. 511, 515–16, 75 S.Ct. 452, 455, 99 L.Ed. 600 (1955): "This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." Since Congress has declined to amend the Act since the Court rendered this interpreta-

tion, we are obliged to continue to adhere stringently to that position. *See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). Thus, "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately" the United States Supreme Court. *Id.* at 287, 90 S.Ct. at 1743. Furthermore, to ensure that "the fundamental constitutional independence of the States and their courts" is preserved, the limited exceptions to the Act's general prohibition are not to be "enlarged by loose statutory construction." *Id.*

The Anti–Injunction Act, as both parties concede, clearly applies in this case. In order for us to uphold the district court's injunction, therefore, it must fall within one of the specific statutory exceptions to the Act. Only the second exception to the Act—necessary in aid of the federal court's jurisdiction—is asserted here.[9] Amtrak contends that its claim of federal preemption suffices to authorize the district court's injunction of the state court proceeding. Amtrak's position is that the district court had jurisdiction over its federal action and that the state court's resolution of the criminal proceeding would have greatly impaired the district court's "flexibility and authority to decide the case" before it; thus, the district court was entitled to issue the injunction. This position has no support in the law.

■ It is clearly established that a claim of federal preemption is not within any of the exceptions to the Anti–Injunction Act; hence, such a claim does not authorize a

---

8. The Bill of Rights—the first ten amendments to the United States Constitution—was ratified effective December 15, 1791. Congress enacted the predecessor to the present Anti–Injunction Act on March 2, 1793. *See* M. Redish, Federal Jurisdiction: Tensions in the Allocation of Judicial Power 310–12 (2nd ed. 1990). That statute was subsequently amended twice; the current language was adopted in 1948.

9. The first exception—express authorization by Congress—may apply because of recent amend-

ments to the Rail Passenger Service Act. *See infra* pp. 1537–1538. That exception, however, was not relied upon by the district court to support its injunction and, at the time the injunction was entered, did not clearly apply.

The third exception to the Act—necessary to protect or effectuate the federal court's judgment (or "the relitigation exception")—is inapplicable. The district court had no judgment to protect when it issued the injunction.

federal court to enjoin a state court proceeding. As the Supreme Court stated in *Atlantic Coast Line Railroad,* "a federal court does not have inherent power to ignore the limitation of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law." *Id.* at 294, 90 S.Ct. at 1747; *see also T. Smith & Son, Inc.· v. Williams,* 275 F.2d 397, 407 (5th Cir. 1960).[10] This rule applies "even when the interference is unmistakably clear," and "regardless of whether the federal court itself has jurisdiction over the controversy." *Atlantic Coast Line R.R.,* 398 U.S. at 294, 90 S.Ct. at 1747; *see also Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 149, 108 S.Ct. 1684, 1691, 100 L.Ed.2d 127 (1988) (reaffirming, in case involving "relitigation exception," that preemption is not exception to Anti–Injunction Act). Furthermore, as the Fifth Circuit has held, "the result is [not] any different because the federal preemption is such as to deprive the state court of *jurisdiction.*" *Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491, 498 (5th Cir.1988) (en banc), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989).

The proper course of conduct for Amtrak was "to seek resolution of [the preemption] issue by the state court." *Chick Kam Choo,* 486 U.S. at 150, 108 S.Ct. at 1691. Having done so, Amtrak, if "adversely affected by the state court's decision, ... was free to seek vindication of its federal right in the Florida appellate courts and ultimately, if necessary, in" the United States Supreme Court. *Atlantic Coast Line R.R.,* 398 U.S. at 296, 90 S.Ct. at 1748.

If Amtrak felt that "because of the Florida Circuit Court's action, [it] faced the threat of immediate irreparable injury sufficient to justify an injunction under usual equitable principles, it was undoubtedly free to seek such relief from the Florida appellate courts, and might possibly in certain emergency circumstances seek such relief from" the Supreme Court as well. *Id.*[11]

### III.

 We therefore conclude that the district court's ruling that Amtrak's federal preemption claim provided an exception to the Anti–Injunction Act, thereby allowing that court to enjoin the state court proceeding, was erroneous and that the issuance of the injunction was an abuse of the district court's discretion. There has been, however, a change in the law since the district court issued its injunction. Congress recently amended the Rail Passenger Service Act; it now explicitly provides that state and local laws shall not apply to waste disposal from railroad conveyances operated in intercity rail passenger service and that "the United States district courts shall have original jurisdiction over any civil actions brought by [Amtrak] to enforce the exemption conferred hereunder and may grant equitable or declaratory relief as requested by [Amtrak]." National and Community Service Act of 1990, Pub.L. No. 101–610, § 601(a), 104 Stat. 3127, 3185–86. This provision was made retroactive to February 5, 1976. *Id.* § 601(c), 104 Stat. at 3186. Thus, Congress may have authorized the district court to issue the very injunction involved in this case. If so, then the injunction would not be prohibited by the Anti–Injunction Act.[12]

---

10. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11. Unlike the lower federal courts, the Supreme Court "does have potential appellate jurisdiction over federal questions raised in state court proceedings, and that broader jurisdiction allows th[e] Court correspondingly broader authority to issue injunctions 'necessary in aid of its jurisdiction.'" *Atlantic Coast Line R.R.,* 398 U.S. at 296, 90 S.Ct. at 1748.

12. It also appears that Tanner's abstention argument, *see supra* note 5, would also fail. In *Baggett v. Department of Professional Regulation, Bd. of Pilot Comm'rs,* 717 F.2d 521, 524 (11th Cir.1983), we held that abstention, pursuant to *Younger v. Harris,* 401 U.S. at 37, 91 S.Ct. at 746, was inappropriate when "preemption is readily apparent ... and, because of preemption, the state tribunal is acting beyond the lawful limits of its authority." In such a case, abstention does not serve any interest of comity or "our federalism." *Id.* In the present case, the new language of the Rail Passenger Service Act clearly indicates that state and local laws

# 1538

■ We think it is appropriate for us to remand this case to the district court. *See, e.g., Concerned Citizens v. Sills,* 567 F.2d 646, 649–50 (5th Cir.1978) (where changes in fact or law occur during the pendency of a case on appeal, "the preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances"). The parties, in a brief hearing before the state court concerning these recent amendments, disputed their effect on this case.[13] They have not, however, presented their arguments concerning this issue to us. While we do not believe there is any serious question as to the constitutional validity of these amendments and their application to this case,[14] we think that the district court is better equipped than we are, at this time, to resolve these issues.

For the foregoing reasons, we VACATE the district court's order enjoining the state court proceedings, to the extent that the injunction is based on the need to protect the district court's jurisdiction over preempted issues, and REMAND the case for the district court to consider the effect recent changes in the law have on its power to issue the injunction in question.

IT IS SO ORDERED.

---

are preempted; thus, the district court would not be required to abstain from enjoining any ongoing state criminal proceeding.

We note, however, that there is another hurdle to the issuance of an injunction in this case—the venerable doctrine that an injunction should not issue when the movant has an adequate remedy at law. *See id.* at 43–44, 91 S.Ct. at 750. Amtrak might have an adequate legal remedy; it can press its federal preemption claim in Florida's trial and appellate courts. We leave the evaluation of the adequacy of this legal remedy, and whether its existence bars the issuance of the injunction being sought, for the district court to address on remand.

13. The state court did not render an opinion on the matter because of the district court's injunction against it.

14. For example, the State posited, in the state court hearing, that retroactive application of these amendments might violate the Constitution's prohibition against *ex post facto* laws. There is, however, no precedent to support the application of that clause to protect the State's interest in prosecuting Amtrak. As Justice Harlan stated in *Rooney v. North Dakota,* 196 U.S. 319, 325–27, 25 S.Ct. 264, 266, 49 L.Ed. 494 (1905), "a statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as *ex post facto* with reference to that crime.... [T]he law ... did not alter the situation to the material disadvantage of the criminal, and, therefore, was not *ex post facto* when applied to his case." *See also Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (for criminal or penal law to be *ex post facto,* it must disadvantage offender affected by it).